**FOOK HONG MAK, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 163, Docket 34237.

United States Court of Appeals,
Second Circuit.

Argued Oct. 29, 1970.

Decided Nov. 24, 1970.

Stanley H. Wallenstein, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., of counsel), for respondent.

Martin H. Leonard, New York City (John L. Murff, New York City, of counsel), for petitioner.

Before MOORE, FRIENDLY and ADAMS,* Circuit Judges.

FRIENDLY, Circuit Judge:

Petitioner Fook Hong Mak, a fifty year old, married male alien, is a citizen of the Republic of China. In April 1968 he was admitted to the United States without a visa, pursuant to § 101(a) (15) (C) and § 214 of the Immigration and Nationality Act of 1952 and the Regulations thereunder, 8 C.F.R. § 214.-2(c) (1), as a nonimmigrant alien "in immediate and continuous transit

*Of the Third Circuit, sitting by designation.

through the United States." He was on a journey from Hong Kong to South America, in the course of which an eight day lay-over in this country had been authorized. When the INS discovered that he was still here six months later, it began a deportation proceeding. Conceding deportability, Fook Hong Mak sought two forms of discretionary relief—adjustment of status to that of an alien lawfully admitted for permanent residence under § 245 or, failing that, voluntary departure under § 244(e).

Section 245, so far as here material, reads as follows:

(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is available to him at the time his application is approved.

\* \* \* \* \* \*

(c) the provisions of this section shall not be applicable to any alien who is a native of any country of the Western Hemisphere or of any adjacent island named in Section 101(b)(5).

Acting under the authority specifically delegated to him by the Immigration and Nationality Act, the Attorney General adopted a regulation, 8 C.F.R. § 214.2(c), which in its present form[1] provides:

§ 214.2 Special requirements for admission, extension, and maintenance of status.

The general requirements in § 214.1 are modified for the following nonimmigrant classes:

\* \* \* \* \* . \*

(c) Transits—(1) Without visas. An applicant for admission under the transit without visa privilege must establish that he is admissible under the immigration laws; that he has confirmed and onward reservations to at least the next country beyond the United States, and that his departure from the United States will be accomplished within ten calendar days after his arrival \* \* \*. The privilege of transit without a visa may be authorized only under the conditions that the carrier, without the prior consent of the Service, will not refund the ticket which was presented to the Service as evidence of the alien's confirmed and onward reservation, *that the alien will not apply for extension of temporary stay or for adjustment of status. under Section 245 of the Act*, and that at all times he is not aboard an aircraft which is in flight through the United States he shall be in the custody directed by the district director.[2] (Emphasis supplied.)

Conceding that Fook Hong Mak met the three numbered requirements of § 245(a) and that the presence in the United States of his wife and children, at least one of whom is a citizen, made even temporary departure somewhat of a

---

1. The applicable provision of the Regulation was first promulgated in 1963. 28 F.R. 3078. The Regulation has since been amended several times with respect to matters not material here.

2. While the Regulation in question was codified under § 214 in the Code of Federal Regulations, the authority under which it was issued derives not only from § 214 of the Act, whereby "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe," but also from § 103, charging the Attorney General with "the administration and enforcement of this chapter and all other laws relating to this chapter" including the establishment of "such regulations \* \* \* as he deems necessary for carrying out his authority," and § 245, providing for the adjustment of status of aliens "in his discretion and under such regulations as he may prescribe."

hardship, the Board of Immigration Appeals, affirming the Special Inquiry Officer, found that the italicized condition of the Regulation precluded consideration of his application for such relief. It granted the alternative request for voluntary departure, which will enable the petitioner to apply from abroad for entry as an immigrant. Fook Hong Mak says that whether or not the Board would have been justified in denying his application for adjustment of status on the merits, the Attorney General's self-imposed restriction on the consideration of it is unlawful.[3]

We are unable to understand why there should be any general principle forbidding an administrator, vested with discretionary power, to determine by appropriate rulemaking that he will not use it in favor of a particular class on a case-by-case basis, if his determination is founded on considerations rationally related to the statute he is administering. The legislature's grant of discretion to accord a privilege does not imply a mandate that this must inevitably be done by examining each case rather than by identifying groups. The administrator also exercises the discretion accorded him when, after appropriate deliberation, he determines certain conduct to be so inimical to the statutory scheme that all persons who have engaged in it shall be ineligible for favorable consideration, regardless of other factors that otherwise might tend in their favor. He has then decided that one element is of such determinative negative force that no possible combination of others could justify an affirmative result. By the same token he could select one characteristic as entitling a group to favorable treatment despite minor variables. Nothing in this offends the basic concept that like cases should be treated similarly and unlike ones differently. The admin-

istrator has simply determined that the one paramount element creates such "likeness" that other elements cannot be so legally significant as to warrant a difference in treatment. This may be an even "juster justice" than to accord different treatment because of trivial differences of fact; at least it is competent for the administrator to think so. The leading student of the problem has recently counseled:

> When legislative bodies delegate discretionary power without meaningful standards, administrators should develop standards at the earliest feasible time, and then, as circumstances permit, should further confine their own discretion through principles and rules.

Davis, Discretionary Justice: A Preliminary Inquiry 55 (1969).

The authorities cited to us would not lead to any contrary view. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), rested on the basis that the Attorney General by regulation had delegated discretion to the Board of Immigration Appeals but then had precluded the Board from exercising it in certain instances. Here the Special Inquiry Officer and the Board are empowered to exercise only such discretion as the Attorney General himself could do within the Regulations he has prescribed. In Mastrapasqua v. Shaughnessy, 180 F.2d 999, 1002 (2 Cir.1950), all the judges agreed that the Attorney General could set up a class of cases as to which he would refuse to exercise discretion, provided the class was "rationally differentiated from other cases, not within that class, where he uses his discretion case by case." The difference of opinion was whether the classification there was capricious, as the majority held, or ration-

---

3. After the submission of briefs in this case, another panel of this court sustained the validity of the Regulation in a per curiam opinion, La Franca v. INS, 433 F.2d 992, 993 (2 Cir. 1970). In apparent recognition that the brief of counsel for La Franca did not challenge the validity of the Regulation with anything like the force of petitioner's brief here, the INS does not seriously object to our considering the issue on its merits. If we were to disagree with our brothers, which we do not, *in banc* consideration would be required.

al, as the dissenting judge thought. We have stated more recently, in United States ex rel. Stellas v. Esperdy, 366 F. 2d 266, 269–270 (2 Cir.1966), vacated and remanded at the INS' suggestion, on a point not here material, 388 U.S. 462, 87 S.Ct. 2121, 18 L.Ed.2d 1322 (1967):

> \* \* \* the Attorney General may govern the exercise of his discretion by written or unwritten rules; indeed it would be remarkable if he did not. Any such decision is an application of facts to principles. All this regulation does is provide a substitute for the exercise of discretion on a case by case basis. But there has been an exercise of discretion; \* \* \* We know of no rule which requires a case by case approach; the Attorney General certainly may proceed by regulation.

■ The Attorney General's determination that aliens who had obtained admission without a visa as being "in immediate and continuous transit through the United States," § 101(a) (15) (C), should not be eligible to apply for adjustment of status under § 245 was reasonably related to the statutory scheme. Both the definition and other provisions of the Immigration and Nationality Act, notably § 238(d) which authorizes the Attorney General to enter into contracts with transportation lines guaranteeing that such passage will occur, show that Congress authorized the Attorney General to accord the unusual benefit of admission as a nonimmigrant and without a visa only because quick departure was assured. It was reasonable for the Attorney General to conclude that aliens admitted on so fleeting a basis were not within the spirit of § 245 and thus could not deserve favorable exercise of his dis-

cretion, even if they came within the letter. He could properly have thought also that to entertain such applications in any case would encourage aliens to obtain admission under the pretense that they were in "immediate and continuous transit" and then stay on for years, as Fook Hong Mak has managed to do,[4] thereby upsetting the balance of benefit and burden that Congress had envisioned. He could have thought further that affording such encouragement might create such burdens for transportation lines that had contracted to assure the departure of such aliens as to make them reluctant to do so and in the long run thus impede the facility of international travel which the privilege of transit without visa was intended to enhance.

■ Petitioner argues that however the matter might otherwise stand, the Attorney General's blanket exclusion of transits without visas from consideration for status adjustment under § 245 was unauthorized because that section itself states two exceptions—alien crewmen and aliens who are natives of any country of the Western Hemisphere or any adjacent island named in § 101(b) (5). But it is fallacious to reason that because Congress *prevented* the Attorney General from exercising any discretion in favor of those groups, which Congress had found to have abused the privileges accorded them,[5] it meant to *require* him to exercise it in favor of everyone else on a case-by-case basis even if experience should convince him of the existence of another group with similar potentialities or actualities of abuse.[6] Cf. Pfizer, Inc. v. Richardson, 434 F.2d 536, 537, 545 (2 Cir.1970). Having expressed its judgment that two categories

---

4. The time involved in appeals from discretionary denials on the part of the Special Inquiry Officer to the Board of Immigration Appeals, and from the Board's affirmance to a court of appeals, is also relevant.

5. See House Report No. 2088, 86th Cong. 2d Sess., p. 2 (1960); Sen.Rep.No.748, 89th Cong. 1st Sess., p. 24 (1965).

6. This also disposes of appellant's contention that the last sentence in § 238(d), "[n]otwithstanding any other provision of this chapter, such aliens may not have their classification changed under section 248 \* \* \*," is indicative of a congressional intent to require case-by-case disposition of all applications for status adjustment under § 245.

should be ineligible for the exercise of discretion, Congress left it open to the Attorney General to determine whether the applications of all other aliens seeking status adjustment under § 245 should be evaluated on the merits of each case or whether some categories were susceptible to handling on a less individualized basis. See Davis, *supra,* at 56.

The petition to review is denied.