GRUENDER, Circuit Judge.
Charles Geach (“Geach”), a citizen of the United Kingdom, was charged as inadmissible due to two foreign convictions. He was placed in exclusion proceedings because he last had entered the United States pursuant to advance parole. Throughout his administrative hearings, Geach was denied the opportunity to apply for suspension of deportation pursuant to 8 U.S.C. § 1254 (repealed 1996).[2] After he was ordered excluded and had exhausted his administrative appeals, the district court[3] denied his petition for habeas corpus relief. On appeal, Geach argues that the district court erred in this denial because the advance parole regulation that precludes him from applying for suspension of deportation is ultra vires to § 1254 and violates his right to due process and equal protection. For the reasons discussed below, we affirm.
I. BACKGROUND
Geach came to the United States for the first time in 1984 on a B-2 visitor visa. He married a United States citizen eight days after his arrival and filed an application to adjust his status to permanent resident. During the pendency of his application, Geach traveled to England on three occasions: in 1985, 1986, and 1991. Before each trip, he obtained a grant of advance parole from the former Immigration and Naturalization Service (“INS”) that permitted him to travel outside the United States with the assurance that he would be allowed to reenter and not be deemed to have abandoned his application for adjustment of status. The advance parole documents issued to Geach for his second and third trips included the following warning: “if your application for adjustment of status is denied, you will be subject to exclusion proceedings.”
In 1992, the INS denied Geach’s application for permanent residency because he had two foreign convictions for possession of marijuana prior to his arrival in 1984. See 8 U.S.C. § 1182(a)(2)(A)®. The INS placed Geach in exclusion proceedings because he last reentered the United States *943 under a 1991 grant of advance parole associated with his third trip to England.
In 1994, the Immigration Judge (“IJ”) at Geach’s first exclusion hearing granted Geach’s request to terminate exclusion proceedings so he could apply for suspension of deportation. The INS appealed this decision, however, and the Board of Immigration Appeals (“BIA”) reinstated Geach’s placement in exclusion proceedings because of his advance parole status. In 1999, the matter was remanded to the IJ, who excluded Geach and denied his request to seek suspension of deportation. The BIA affirmed these rulings.
In 2003, Geach petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[4] He argued that the regulation preventing him from seeking suspension of deportation was ultra vires to the suspension of deportation statute and that his placement in exclusion proceedings violated his constitutional right to due process and equal protection. The district court denied Geach’s petition.
II. DISCUSSION
A.Standard of Review
This Court reviews de novo a question of law in a denial of a habeas petition, Grove v. Fed. Bureau of Prisons, 245 F.3d 743, 746 (8th Cir.2001), but must give substantial deference to the INS’s interpretation of federal statutes and regulations, see INS v. Aguirre-Aguirre, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).
B. Applicable Law
Because proceedings in this case began prior to April 1, 1997, we apply the transitional rules of the Illegal Immigrant Reform and Immigration Responsibility Act (IIRIRA) and, therefore, apply the provisions of the former Immigration and Naturalization Act (INA) to the merits of this case.[5] See, e.g., Sol v. INS, 274 F.3d 648, 650 (2d Cir.2001); see generally 8 U.S.C. § 1101.
C. Ultra Vires
Geach argues that the advance parole regulation, 8 C.F.R. § 245.2(a)(4)(ii) (1991) (amended 1996), is ultra vires to the statute that establishes suspension of deportation, 8 U.S.C. § 1254, because the advance parole regulation denies suspension of deportation to aliens admitted on advance parole who otherwise meet the statutory requirements of § 1254. We disagree.
Under the INA, aliens who arrive at the United States border are subject to exclusion proceedings while aliens who are physically present in the United States are subject to deportation proceedings. See 8 U.S.C. § 1251(a) (1991) (current version at 8 U.S.C. § 1226). One exception to this general rule is the concept of “parole.” Aliens who are physically present in the United States pursuant to a grant of parole are not considered “admitted” for purposes of deportation proceeding eligibility. 8 U.S.C. § 1182(d)(5)(A). The Attorney General created “advance parole” to allow aliens who are present in the United States and have applied for an *944 adjustment of status to travel outside the United States without abandoning their applications. 8 C.F.R. § 245.2(a)(4)(ii). A potential consequence of advance parole, however, is mandatory placement in exclusion proceedings. “If the application [for adjustment of status] of an individual granted advance parole is subsequently denied, the applicant will be subject to the exclusion provisions of ... the Act. No alien granted advance parole and inspected upon return shall be entitled to a deportation hearing.” 8 C.F.R. § 245.2(a)(4)(h). Thus, a consequence of placement in exclusion proceedings is the inability to apply for suspension of deportation. Leng May Ma v. Barber, 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); see also Sherifi v. INS, 260 F.3d 737, 740 (7th Cir.2001) (recognizing the “longstanding principle that persons in exclusion proceedings prior to April 1, 1997 are ineligible to apply for suspension of deportation”).
The advance parole regulation is not ultra vires to the suspension of deportation statute because the Attorney General’s ability to suspend deportation is discretionary. 8 U.S.C. § 1254 (“the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence” (emphasis added)). Given this broad discretion Congress granted to the Attorney General with regard to suspension of deportation, the Attorney General’s decision to categorically exclude aliens under advance parole from suspension of deportation relief is not outside the scope of § 1254. See Leng May Ma, 357 U.S. at 186, 78 S.Ct. 1072 (holding that aliens who are paroled into the United States are not entitled to deportation proceedings, only exclusion proceedings); Barney v. Rogers, 83 F.3d 318, 321 (9th Cir.1996) (holding that an alien with a pending adjustment application was placed properly in exclusion proceedings following a grant of advance parole). “We are unable to understand why there should be any general principle forbidding an administrator, vested with discretionary power, to determine by appropriate rulemaking that he will not use it in favor of a particular class on a case-by-case basis .... ” Mouelle v. Gonzales, 416 F.3d 923, 929 (8th Cir.2005) (quoting Fook Hong Mak v. INS, 435 F.2d 728, 730 (2d Cir.1970)).
Geach raises a number of ultra vires arguments on appeal to establish that Congress did not intend for aliens to be categorically denied suspension of deportation when they otherwise satisfy the statutory prerequisites of § 1254. These arguments fail, however, because they rest on a false premise. Aliens are not automatically eligible for suspension of deportation just because they could satisfy the prerequisites if allowed to apply. Geach overlooks the fact that the inquiry into an alien’s eligibility for suspension of deportation is subordinate to the Attorney General’s overriding discretion to determine wh.o is eligible for such suspension. See Patel v. McElroy, 143 F.3d 56, 58 (2d Cir.1998) (holding that an alien in exclusion proceedings is not entitled to apply for suspension of deportation).
The dissent, after emphasizing that under § 1254, a brief, casual and innocent trip abroad by itself does not render an alien ineligible for suspension of deportation, also fails to take the next step and acknowledge the Attorney General’s discretion under § 1254 to deny suspension of deportation on other grounds to aliens who might otherwise meet the statutory criteria. The advance parole regulation did not deny Geach an opportunity to apply for suspension of deportation merely because of his brief trips abroad; that would indeed be a direct contravention of § 1254 *945 and, thus, unallowable. Instead, the advance parole regulation granted Geach the benefit of making those trips without abandoning his application for adjustment of status to permanent resident — in return for the burden of going directly into exclusion proceedings, rather than potentially more forgiving deportation proceedings, should his application for adjustment of status ultimately be denied. Nothing in § 1254 precludes the Attorney General from exercising his discretion in this manner.[6] Furthermore, as the dissent recognizes, we have held that the Attorney General can exercise such a statutory grant of broad discretion by rule as well as on a case-by-case basis, Mouelle 416 F.3d at 928-930, and there is no reason to depart from that well-reasoned holding in this case.
We are aware of the resulting hardship for Geach, a longtime resident, and his American family. Nevertheless, consistent with the advance parole regulation, the advance parole document warned Geach that his travel to England could result in exclusion proceedings, and he was placed in those exclusion proceedings when his application for adjustment was denied. Geach’s resultant inability to apply for suspension of deportation was not ultra vires to the Attorney General’s broad statutory discretion with respect to suspension of deportation.
D. Equal Protection
Geach argues that his inability to seek suspension of deportation violates his right to equal protection. See Plyler v. Doe, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (holding that aliens are protected by the Fifth Amendment’s equal protection guarantee). To establish an equal protection violation, Geach must identify a class of similarly situated persons who are treated dissimilarly. See Anderson v. Cass County, Mo., 367 F.3d 741, 747 (8th Cir.2004). Disparate treatment of similarly situated aliens will be upheld, however, if the Government has a rational basis for its classifications. See, e.g., Vasquez-Velezmoro v. INS, 281 F.3d 693, 697 (8th Cir.2002).
As a threshold matter, the Government argues that we do not have subject-matter jurisdiction over this constitutional issue because Geach failed to exhaust administrative remedies on this issue. This is an issue of first impression for this Court. We are prohibited from exercising subject-matter jurisdiction when an alien fails to exhaust administrative remedies “unless the petition presents grounds which the court finds could not have been presented in such prior proceeding.” 8 U.S.C. § 1105a(c). We agree with the circuits that have considered this issue and hold that we have subject-matter jurisdiction over aliens’ unexhausted constitutional claims unless the claims concern procedural errors correctable by the administrative tribunal. See, e.g., Castaneda-Suarez v. INS, 993 F.2d 142, 144 (7th Cir.1993); Ravindran v. INS, 976 F.2d 754, 762-63 (1st Cir.1992); Bagues-Valles v. INS, 779 F.2d 483, 484 (9th Cir.1985) (holding that aliens are not precluded from raising due process claims on appeal that were not raised during administrative proceedings because the BIA has no jurisdiction to adjudicate constitutional issues). Geach’s equal protection claim does not concern a procedural error. See Ravindran, 976 F.2d at 762-63 (suggesting that “challenging the constitutionality of ... statutes *946 [or] regulations” is not a procedural error). Therefore, we consider the merits.
Geach argues that he is similarly-situated to aliens who reenter the United States without advance parole and that the Government failed to provide a rational basis for allowing those aliens to seek suspension of deportation but not allowing him to apply.[7] Aliens who attempt to legally reenter the United States without advance parole are treated as applicants for admission, 8 U.S.C. § 1225(a), thereby subjecting them to exclusion proceedings and rendering them ineligible for suspension of deportation. Therefore, the only aliens who reenter without advance parole and are allowed to apply for suspension of deportation are aliens who illegally reenter the United States. Geach is not similarly situated to these illegal aliens because they are subject to criminal charges and other adverse consequences. See, e.g., 8 U.S.C. § 1326 (establishing fines and imprisonment for illegal reentry); 8 C.F.R. 245.2(a)(4)(h) (deeming aliens who reenter illegally to have abandoned their applications for adjustment of status); cf. Dimenski v. INS, 275 F.3d 574, 578 (7th Cir.2001) (listing benefits of advance parole).
Even if Geach was similarly situated to aliens who reenter illegally, any difference in treatment of these aliens is justified by the government’s rational basis of “efficient administration of the immigration laws at the border.” London v. Plasencia, 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). “The authority of Congress and the executive branch to regulate the admission and retention of aliens is virtually unrestricted.” Francis v. INS, 532 F.2d 268, 273 (2d Cir.1976). “Rational basis review does not require us to identify the legislature’s actual rationale for the distinction; rather, we will uphold the statute if ‘there are plausible reasons for Congress’ action.’ ” Hamama v. INS, 78 F.3d 233, 237 (6th Cir.1996) (quoting United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980)). There are plausible reasons for establishing different administrative procedures for aliens depending on the legality of their reentries. For example, it would be rational to place paroled aliens in exclusion proceedings to offset the administrative burdens created by their departures during the pendency of their adjustment applications. Cf. Skelly v. INS, 168 F.3d 88, 91-92 (2d Cir.1999) (holding that conservation of government resources is a rational basis for differing procedures for aliens in exclusion proceedings and aliens in deportation proceedings).
E. Due Process
Geach alleges generally that his inability to apply for suspension of deportation violates due process because his long-time residency in the United States creates a liberty interest in continuing to reside in the United States. Geach does not adequately develop a due process argument in his brief.[8] See Lopez v. Hei *947 nauer, 332 F.3d 507, 512 (8th Cir.2003) (“To demonstrate a violation of dne process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice.”). However, we agree with the district court that Geach’s placement in exclusion proceedings satisfies due process. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950) (“Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.”); Borrero v. Aljets, 325 F.3d 1003, 1007 (8th Cir.2003) (holding that regulations governing the parole of aliens do not violate the Fifth Amendment’s Due Process Clause). Geach is entitled to adequate notice and a fair hearing. Woodby v. INS, 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). He received both. See Nwandu v. Crocetti 8 Fed.Appx. 162, 165-66 (4th Cir.2001) (unpublished per curiam) (holding that advance-parole form provides adequate notice of possible placement in exclusion proceedings). His placement in an exclusion hearing rather than a deportation hearing does not violate due process.
III. CONCLUSION
For the reasons set forth above, we affirm.

. We use the statute as it existed in 1994, the year of Geach's first exclusion proceeding. See discussion infra Section II.B.

. The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

. Geach properly sought habeas corpus instead of directly appealing his exclusion: "any alien against whom a final order of exclusion has been made ... may obtain judicial review of such order by habeas corpus proceedings and not otherwise.” 8 U.S.C. § 1105a (repealed 1996).

. The Government argues that the IIRIRA's "stop-time” rule precludes Geach from obtaining his desired ultimate relief, suspension of deportation. See 8 U.S.C. § 1229b(d)(1); Afolayan v. INS, 219 F.3d 784, 787-89 (8th Cir.2000). Because we affirm the district court on other grounds, we do not address the question of whether the stop-time rule precludes such relief.

. As we discuss infra with regard to Geach’s equal protection claim, it is rational to place paroled aliens in exclusion proceedings, for example, to offset the administrative burdens created by their departures during the pendency of their adjustment applications.

. In earlier proceedings, Geach argued that he was similarly situated to aliens who apply for status adjustments and do not depart the United States during the pendency of their application. Geach abandoned this argument on appeal. His fleeting reference to "aliens who failed to depart” in the last sentence of the argument section in his opening brief is insufficient to constitute an appellate "argument.” See Fed. R.App. P. 28(a)(9)(A) (requiring appellants’ briefs to contain arguments "with citations to the authorities and parts of the record on which the appellant relies”); United States v. Zavala, 427 F.3d 562, 565 (8th Cir.2005) (holding an argument abandoned despite a brief mention of the issue in appellant's brief).

. Geach raised more detailed due process arguments in earlier proceedings and in his reply brief. However, he abandoned such arguments on appeal by failing to raise them *947 in his opening brief. See Fed. R.App. P. 28(a)(9); supra note 6.