BRIGHT, Circuit Judge,
dissenting.
It has been said that there are ten million illegal aliens residing in this country as of 2004. GAO, Immigration Enforcement: Weaknesses Hinder Employment Verification and Worksite Enforcement Efforts, at *1 (Aug.2005), available at www.gao.gov/new.items/d05813.pdf. That is a sad state of affairs and something needs to be done to resolve this problem. However, Charles Geach is not part of the problem. Geach entered this country in 1984 on a visitor visa, married an American, and filed an application to adjust his status to permanent residency. His application remained pending for eight years. During that time, Geach had three American children with his American wife, worked to support his family, paid taxes, and followed the laws of this country. Today, Geach has lived in this country for over twenty-one years, has a fourth American child, and owns a home with his wife. He continues to work, pay taxes, and obey the law. Geach, however, has lost the opportunity to remain in this country for a questionable reason. Geach made brief visits to see his parents in England in 1985, 1986, and 1991, with each of the three visits lasting less than thirty days. Because of those visits coupled with a pri- or, very minor, criminal record in his youth, Geach finds himself banned from remaining with his wife and children in this country. Yet had he not visited his parents, he would have a good opportunity of remaining here.
Let me explain.
When Geach obtained permission from the Attorney General to visit his parents in England, he received advance parole travel documents that permitted him to return to this country. However, under the INS’s advance parole regulation, 8 C.F.R. § 245.2(a)(4)(h), an alien who travels under advance parole is placed in exclusion proceedings when the INS denies the alien’s adjustment application. See Slip Op. at 5-6. In 1992, the INS denied Geach’s adjustment application and placed him in exclusion proceedings because, before coming to this country, Geach incurred two convictions for possessing marijuana as a *948 young man in his twenties. See 8 U.S.C. § 1182(a)(2)(A)(i) (excluding aliens with two or more controlled substance convictions from admission into the United States). Suppose Geach had not traveled to visit his parents, then he would have been placed in deportation proceedings because he entered this country under a visa in 1984. See Succar v. Ashcroft, 394 F.3d 8, 12-13, 15-16 (1st Cir.2005) (explaining that before 1996 immigration reform, aliens who made an entry into the United States were subject to deportation proceedings while aliens who had not made an entry were subject to exclusion proceedings, and aliens paroled into the United States were treated as aliens who had not entered and therefore subject to exclusion proceedings). In deportation proceedings, Geach would have an opportunity to remain in this country despite his prior marijuana convictions by applying for suspension of deportation under 8 U.S.C. § 1254.[9]
Congress passed the suspension of deportation statute to afford some aliens relief based on the hardship that deportation would cause to their families in the United States, but made this relief available only in deportation proceedings. To qualify for this relief, Geach would need to show his deportation would cause extreme hardship to his American wife and children. He would also need to show good moral character in this country for at least seven years. See infra n.4 (setting forth the eligibility criteria for suspension of deportation applicable to Geach, § 1254(a)(1), (b)(2)). Favorable factors that would support the Attorney General’s grant of an indefinite stay include: Geach’s age (fifty-two), his long duration in the United States (twenty-one years), his strong and continuing marriage to his United States citizen wife (Elizabeth), his four United States citizen children (Christopher, James, Lucy, and Emma), his steady employment to support his family, and his following the laws of this country for over twenty-one years.
As I explain below, the regulation placing Geach in exclusion proceedings conflicts with the intent of Congress and is invalid as applied to Geach. The suspension of deportation statute gives the Attorney General discretion in deciding which, if any, aliens satisfying the statutory eligibility criteria should nonetheless be denied suspension of deportation. See infra n.4 (setting forth the text of § 1254(a)). However, the Attorney General’s discretion under this statute is not without limits.
The statutory structure of setting forth eligibility criteria and giving the Attorney General discretion to grant or deny relief to qualifying aliens is common to many forms of immigration relief. INS v. Cardoza-Fonseca, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), discussed the concept of discretion granted the Attorney General in certain immigration matters. The Court commented:
This vesting of discretion in the Attorney General is quite typical in the immigration area, see, e.g., INS v. Jong Ha Wang, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981). If anything is anomalous, it is that the Government now asks us to restrict its discretion to a narrow class of aliens. Congress has assigned to the Attorney General and his delegates the task of making these *949 hard individualized decisions; although Congress could have crafted a narrower definition, it chose to authorize the Attorney General to determine which, if any, eligible refugees should be denied asylum.
Id. at 444-45, 107 S.Ct. 1207.
In Succar v. Ashcroft, 394 F.3d 8 (1st Cir.2005), the First Circuit considered the scope of the Attorney General’s delegated authority under the adjustment of status statute, 8 U.S.C. § 1255.[10] The statute included aliens paroled into this country among the class of aliens eligible for adjustment of status. Id. at 14. However, the INS later promulgated a regulation, 8 C.F.R. § 245.1(c)(8), that made “[a]ny arriving alien who is in removal proceedings ” ineligible for adjustment of status.[11] Id. at 17. The appellant argued that the regulation was contrary to Section 1255(a) because it would have the effect of denying adjustment of status to most paroled aliens. Id. at 18, 21. The court’s opinion further explained that “Parolees, although they are physically present in the United States, are treated as if they were at the border seeking admission.... [Thus, as] arriving aliens, parolees are subject to removal proceedings[ ] ‘if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted .... ’ 8 U.S.C. § 1225(b)(2)(A).” Id. at 16.
“The Attorney General defended] the regulation, arguing that 8 U.S.C. § 1255(a) expressly states that the decision to grant adjustment of status is subject to the Attorney General’s discretion and that the regulation is no more than a valid exercise of that discretion.” Id. at 21. The First Circuit disagreed and held “that the regulation is contrary to the language and intent of the statute, 8 U.S.C. § 1255(a).” Id. at 9. Significantly, the court reasoned:
The mere fact that a statute gives the Attorney General discretion as to whether to grant relief after application does not by itself give the Attorney General the discretion to define eligibility for such relief.... [T]he statute is not silent — it defines persons who have parole status as eligible for adjustment of status and does not carve out an exception for parolees who are in removal proceedings.
The statutory scheme reflects Congress’s careful balancing of the country’s security needs against the national interests Congress wished to advance through adjustment of status proceedings. The regulation upsets the balance Congress created.
Checking our construction of the statute against the legislative history of section 1255, we find the regulation to be inconsistent with the intent expressed in the statute. In 1960, when Congress included paroled aliens as aliens who are eligible for adjustment of status relief through section 1255, it did so to solve certain problems .... The effect *950 of the regulation is to re-institute the problems Congress wished to solve. Further, until the 1997 promulgation of the regulation, the Attorney General had consistently interpreted section 1255 in a manner consistent with the statute and the legislative history and inconsistent with the 1997 regulation.
Id. at 10.
[B]eeause eligibility is explicit in this statute, the Attorney General cannot categorically refuse to exercise discretion favorably for classes deemed eligible by the statute.
Id. at 29 n. 28.
Succar is good authority to grant relief to Geach. Rather than follow Succar, the majority in this case follows the reasoning of Mouelle v. Gonzales, 416 F.3d 923, 927-30 (8th Cir.2005), which expressly disagreed with Succar. Confronted with a similar question as the First Circuit, a majority in Mouelle concluded that the Attorney General’s discretion included the authority to make classes of aliens ineligible even if they are eligible under the statutory criteria. See id. at 929. (“If the Attorney General decided that arriving aliens in removal proceedings will not be given adjustment-of-status relief (as she clearly did in promulgating this rule), and if that decision does not contravene the statute (as we conclude it does not), then it makes little sense to invalidate this regulation simply because it speaks in terms of eligibility.”). “While Congress surely did speak to eligibility in the statute, it left the question whether adjustment-of-status relief should be granted to the Attorney General’s discretion.... Administrators vested with such discretion may exercise that discretion by rule or on a case-by-case basis.” Id. at 928. Judge Bye dissented in Mouelle “for the reasons articulated in Succar ....” Id. at 931.
Since the Mouelle decision, two other circuits have considered a similar issue. In Bona v. Gonzales, 425 F.3d 663, 668 (9th Cir.2005), the Ninth Circuit “agree[d] with the analysis and holding of Succar [, stating] that because the ‘regulation redefines certain aliens as ineligible to apply for adjustment of status ... whom a statute, 8 U.S.C. § 1255(a), defines as eligible to apply!,]’ the regulation is invalid.” (quoting Succar, 394 F.3d at 9). “[W]e agree with the First Circuit that Congress has spoken to the precise issue of who is eligible to apply for adjustment of status and that 8 C.F.R. § 245.1(c)(8) is directly contrary to this Congressional determination.” Id. at 670-71. “!W]e find the reasoning of Succar more persuasive and therefore reject the approach taken by the Mouelle court.” Id. at 668 n. 6.
The Third Circuit also reached the conclusion that the regulation is contrary to the statute, but on the ground that “the regulation is not based on a permissible statutory reading.” Zheng v. Gonzales, 422 F.3d 98, 103, 119-20 (3d Cir.2005).
We concur with the government that the statute grants the Attorney General broad discretion to issue regulations, and that this discretion may include some power to regulate eligibility to adjust status. But the Attorney General’s power is not unlimited, and must be exercised consistently with the intent of the statute. Because the statute allows paroled aliens to apply for adjustment of status, whereas the regulation forecloses this statutory eligibility, the regulation is not based on a permissible statutory reading.

Id.

The background in Mouelle is quite different than that in the present case. The Mouelles overstayed their nonimmigrant visas. 416 F.3d at 924. The Mouelles later filed an application for asylum and *951 withholding of removal, then left the United States on advance parole and did not have proper documents to reenter the United States. Id. at 924-25. The INS commenced removal proceedings following their return to this country. Id. The immigration judge denied the Mouelles’ claims for asylum and withholding of removal, and the BIA affirmed. Id. The Mouelles then sought to reopen their removal proceedings and remand to the immigration judge so that they might apply for adjustment of status, which the BIA denied. Id. at 926. On appeal to this court, the Mouelles, among other things, argued that the BIA improperly denied their motion to reopen because the BIA determined they were considered arriving aliens. Id. at 926-27. The court noted that 8 C.F.R. § 1245.1(c)(8) made ineligible for adjustment of status “[ajny arriving alien who is in removal proceedings pursuant to ... section 240 of the Act [8 U.S.C. § 1229a].” Id. at 927. The court asserted that, because the statute granted full discretion to the Attorney General to grant or deny relief, the Attorney General could by regulation deny relief by rule, as well as case-by-case adjustment. Id. at 928-30. However, Mouelle is different on its facts and does not interpret the same statute and regulation as in the present case. Thus, if its reasoning is subject to question, its rational need not bind this panel.
The advance parole regulation, 8 C.F.R. § 245.2(a)(4)(h), is contrary to the suspension of deportation statute, 8 U.S.C. § 1254. Section 1254 shows Congress’s intent that aliens would not become ineligible for suspension of deportation based on “brief, casual, and innocent” trips abroad. To be eligible under the suspension of deportation statute, an alien must “ha[ve] been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application .... ” § 1254(a). The Supreme Court decided in INS v. Phinpathya, 464 U.S. 183, 196, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984), that any travel abroad during the seven-year period would make an alien ineligible for suspension of deportation. Congress responded, amending the statute to add; “An alien shall not be considered to have failed to maintain continuous physical presence in the United States ... if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence.” § 1254(b)(2). The legislative history to the amendment also evinces Congress’s intent. See H.R.Rep. No. 99-682(1), at 78, reprinted in 1986 U.S.C.C.A.N. 5649, 5682 (“The Committee Amendment relaxes the recent Supreme Court interpretation with respect to the seven year ‘continuous physical’ residence requirement to qualify for suspension of deportation .... That decision [INS v. Phinpathya, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984) ] held that any departure from the U.S. during the seven year period was interruptive of the residence requirement, thus making the alien ineligible' for relief. This Amendment relaxes the residence requirement in the case of a ‘brief, casual, and innocent’ departure from the U.S.”). Further, the suspension of deportation statute reveals a carefully drafted legislative scheme consisting of specific eligibility criteria and exceptions to those criteria.[12] Congress *952 did not give the Attorney General the discretion to undo this scheme and the criteria determining eligibility.
The majority concedes the regulation would directly contravene § 1254 if it “den[ied] Geach an opportunity to apply for suspension of deportation merely because of his brief trips abroad .... ” Slip Op. at 944r-45. In the majority’s view, however, the advance parole regulation is permissible because it “granted Geach the benefit of making those trips without abandoning his application for adjustment of status to permanent resident .... ” Id.
I disagree with this analysis. In my view, the advance parole regulation made Geach ineligible for suspension of deportation based on his brief, casual, and innocent trips to England. Congress, in amending the suspension statute, intended that travel of this character would not make an alien ineligible for relief. Geach traveled using advance parole and the regulation placed him in exclusion proceedings on rejection of his adjustment application. See Slip Op. at 944. Alternatively, if Geach had traveled without advance parole and presented himself for inspection on his return from England, he still would have been placed in exclusion proceedings. See Slip Op. at 945^46. Thus, the regulation assured that the only way Geach could preserve his right to a suspension of deportation hearing was if he did not visit his parents during the eight years his adjustment application remained pending before the INS.
No individual discretion exists as to those aliens who have traveled abroad under advance parole, such as Geach. The advance parole regulation frustrates the purpose of the suspension of deportation statute to alleviate the extreme hardships that can be created by deporting an alien whose family and whole life is here in the United States. The regulation also frustrates the intent of Congress that an alien could take a brief, casual, and innocent trip abroad and remain eligible for suspension of deportation.
I note that the regulation could have been written to avoid this result. Under a prior version of the advance parole regulation, the Fourth Circuit concluded that an alien returning under advance parole should have been placed in deportation proceedings after his return to this country and entitled to a suspension of deportation hearing. Joshi v. INS, 720 F.2d 799, 803-04 (4th Cir.1983). The Fourth Circuit also explained that the parole statute, 8 U.S.C. § 1182(d)(5), which requires that an alien admitted under parole leaves his le *953 gal status at the border and upon which the INS conceived advanced parole, was intended “to allow the applicant entry ‘for emergent reasons or for reasons deemed strictly in the public interest[ ]’ ... [and] does not purport to deal with authorization for foreign travel or with readmittance to the country to resume prosecution of a pending motion.” Id. at 803-04.
I would hold the advance parole regulation, 8 C.F.R. § 245.2(a)(4)(ii), invalid in this case as inconsistent with the suspension of deportation statute, 8 U.S.C. § 1254. See Succar v. Ashcroft, 394 F.3d 8, 9-10, 36 (1st Cir.2005); Bona v. Gonzales, 425 F.3d 663, 668 (9th Cir.2005); Zheng v. Gonzales, 422 F.3d 98, 103, 119-20 (3d Cir.2005). Accordingly, I dissent.

. In fact, the immigration judge initially terminated exclusion proceedings "to allow Mr. Geach the opportunity to malee an application for suspension of deportation,” reasoning that his trips to see his parents in England were "brief, casual and innocent.” Add. at 67-68. The Board of Immigration Appeals reversed and ordered that Geach be placed back in exclusion proceedings without the opportunity of suspension of deportation in accordance with the terms of the advance parole regulation. Add. at 62-64.

. The court quoted the applicable text of Section 1255(a):
The status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.
Succar, 394 F.3d at 24.

. In 1996, “Congress ... eliminated deportation and exclusion proceedings and replaced them with removal proceedings Id. at 13.

. Section 1254 read:
(a) Adjustment of status for permanent residence; contents
As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in section 1251(a)(4)(D) of this title) who applies to *952 the Attorney General for suspension of deportation and-
(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence;
(2) is deportable under paragraph (2), (3), or (4) of section 1251(a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves ....
(b) ... (2) An alien shall not be considered to have failed to maintain continuous physical presence in the United States under paragraphs (1) and (2) of subsection (a) if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence.