# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DELIA RAMOS BONA,

　　　　　　　　　*Petitioner,*

　　　　　v.

ALBERTO R. GONZALES, Attorney
General,

　　　　　　　　　*Respondent.*

No. 03-71596

Agency No.
A70-151-095

DELIA RAMOS BONA,

　　　　　　　　　*Petitioner,*

　　　　　v.

ALBERTO R. GONZALES, Attorney
General,

　　　　　　　　　*Respondent.*

No. 03-72488

Agency No.
A70-151-095

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 8, 2005—Pasadena, California

Filed September 30, 2005

Before: Procter Hug, Jr., Warren J. Ferguson, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hug

13717

**COUNSEL**

Stuart I. Folinsky, Los Angeles, California, for the petitioner.

Earle B. Wilson and Jennifer Paisner, Office of Immigration Litigation, Washington, D.C., for the respondent.

**OPINION**

HUG, Circuit Judge:

This case involves a woman who is a Philippine citizen whose husband has served for 19 years in the United States Navy and is a naturalized United States citizen. They have three children who are also now naturalized citizens. She arrived in the United States in 1991 with her three children as endangered family members of a serviceman when Mt. Pinatubo erupted in the Philippines. She was placed in removal proceedings eight years later and denied the ability to apply for adjustment of status under an INS regulation because she was paroled into the United States at the time of her arrival in 1991. We hold in agreement with *Succar v. Ashcroft,* 394 F.3d 8 (1st Cir. 2005), that the regulation is in conflict with the governing statute and is thus invalid. Under the statute she is entitled to apply for adjustment in the removal proceedings.

This case started with the best of intentions by our own government, with the evacuation of military personnel and their families from the Philippine islands under threat of an impending volcanic eruption. But the case quickly digressed into a series of unwise and misplaced discretionary decisions which ultimately led to an immigration judge entering a final order of removal against Delia Ramos Bona ("Delia"). Delia appeals the Board of Immigration Appeals's ("Board") decision affirming the final order of removal and the Board's refusal to remand the case. Most importantly, however, Delia also argues that this court should follow the First Circuit's decision in *Succar,* which held that 8 C.F.R. § 245.1(c)(8), the regulation that precludes arriving aliens from seeking adjustment of status in removal proceedings, is invalid. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) to consider this appeal. We agree with the *Succar* decision and hold that 8 C.F.R. § 245.1(c)(8) is invalid.[1] Therefore, Delia was improperly precluded from applying for adjustment of status during her removal proceedings. Accordingly, we grant the petition for review and remand the case to the Board of Immigration Appeals for further proceedings.

I.

Delia is a native and citizen of the Philippines. She is married to Rolando G. Bona ("Rolando"), a naturalized United States citizen. The Bonas are the parents of three children who are also naturalized citizens. At the time of oral argument, Rolando had served in the United States Navy for approximately nineteen years.

---

[1]8 C.F.R. § 245(c)(8) is identical to 8 C.F.R. § 1245.1(c)(8). Section 245.1(c)(8) applies to the immigration agencies within the Department of Homeland Security, whereas section 1245.1(c)(8) applies to the immigration courts and the Board of Immigration of Appeals which remain within the Department of Justice. This opinion will refer to 8 C.F.R. § 245.1(c)(8), although both sections are challenged on appeal.

In 1989, while Delia and the children were living in the Philippines, Rolando filed an immediate relative visa petition on behalf of his wife and children. The petitions were granted the same year.

In August 1991, the United States military evacuated its personnel and their families from the Philippine Islands due to the eruption of Mount Pinatubo. It appears that these military families had no choice but to evacuate at the military's insistence and their transportation was paid for by the government. As a result, Delia and her children were evacuated from the Philippines and she and the children were paroled into the United States on August 21, 1991. In September of that same year, Rolando was naturalized.

Following her husband's naturalization, Delia applied for adjustment of status. However, her adjustment application was denied by the then Immigration and Naturalization Service ("the Service") in October 1991. It appears that the Service denied the adjustment application because it believed that Delia's *husband,* Rolando, had fraudulently obtained his immigrant visa and subsequent citizenship. According to the Service's hypothesis, Rolando received his immigrant visa (and subsequent citizenship) as the "unmarried son of a United States citizen." However, the Service believed that at the time Rolando applied for and received his visa, he was not "unmarried" because he was in fact married to Delia. Subsequently, the Service revoked Delia's parole authorization.

At the time of the denial, these allegations of fraud had never been adjudicated or proven in any court of law. Nor does it appear that there was any evidence that Delia participated or otherwise was involved in the fraud, if in fact it did occur. At no time has the Service ever attempted to de-naturalize Rolando or revoke the approved visa petition granted to Delia in 1991. In fact, as of this time, the Service could not take steps to de-naturalize Rolando based upon his long service to the United States military. In spite of denying

Delia adjustment, the Service did grant the Bona children permanent resident status based upon Rolando's citizenship. The children have since been naturalized.[2]

To compound matters, the Service waited more than eight years to initiate removal proceedings against Delia. Delia's August 1999 Notice to Appear alleged that Delia: 1) was an arriving alien, 2) was not a citizen or national of the United States, 3) had been admitted to the country as a parolee, and 4) had obtained admission into the United States by fraud. Thus, the Service charged her as removable under 8 U.S.C. § 1227(a)(1)(A) as an inadmissible alien.

The following month, the Service amended the charging document. The amendment included an additional charge of inadmissibility under 8 U.S.C. § 1182(a)(7), alleging Delia was an immigrant not in possession of a valid entry document at the time of her application for admission.

The Immigration Judge ("IJ") conducted a hearing on both charges of inadmissibility and rendered his decision in February 2000. Initially, the IJ determined that the first charge failed as a matter of law because as a parolee Delia was not subject to the deportability provisions of section 1227.

Next, the IJ turned to the second charge of removability under section 1182. Delia admitted the basic elements of the charge, most notably that she was an arriving alien. Based upon her status as an arriving alien, the IJ made clear that he could not consider Delia's application for an adjustment of status.[3] Recognizing that there were no other "remedies" available to Delia, he gave the parties three options: 1) the parties

---

[2]This is based upon representations made to the Court by Delia's attorney at oral argument.

[3]It is important to note the Delia was not attempting to *renew* her previously denied application for adjustment. Rather, she was attempting to make a *new* application for adjustment in her removal proceedings.

could agree to an administrative closure of the case, which would require the government's consent, 2) Delia could withdraw her application for admission and agree to return to the Philippines in order to pursue her application for admission from her native country, or 3) the matter could proceed. Both the government and Delia agreed to proceed. As a result, the IJ found clear and convincing evidence that Delia was removable. Additionally, he refused to consider Delia's application for adjustment because she was ineligible for such relief as an arriving alien. 8 C.F.R. § 245.1(c)(8). Thus, Delia was ordered removed to the Philippines.

Delia appealed the decision to the Board of Immigration Appeals arguing that she was not an "arriving alien" and should have been allowed to adjust her status in her removal proceedings. The Board, in a *per curiam* decision, rejected this argument without comment and dismissed the appeal. On a motion to reconsider, the Board again rejected this argument because Delia admitted at her removal hearing that she was an "arriving alien."

On appeal, she renews her argument that she was not an "arriving alien" within the meaning of the Immigration and Naturalization Act. Alternatively, she argues that even if she is "an arriving alien" she should not have been precluded from applying for adjustment of status in her removal proceedings. She urges this court to adopt the rationale of *Succar v. Ashcroft,* 394 F.3d 8 (1st Cir. 2005), and hold that the regulation promulgated by the Attorney General, 8 C.F.R. § 245.1(c)(8), which precludes "arriving aliens" from applying for adjustment of status in removal proceedings, is invalid because it is in direct conflict with 8 U.S.C. § 1255(a).[4]

_____

[4]The First Circuit decided the *Succar* case while this case was pending on appeal to this court. Delia initially raised the issue in a letter to the court pursuant to Fed. R. App. P. 28(j). The issue was addressed at oral argument and the parties were ordered to provide supplemental briefing on the issue. The court also accepted an *amicus* brief filed by the American

II.

**[1]** The precise issue raised by this appeal is whether a paroled alien, who is also deemed an arriving alien under 8 C.F.R. § 1.1(q), is properly precluded from applying for adjustment of status in removal proceedings. This is a novel issue, not yet addressed by this circuit. To answer this question, we must first determine whether Delia is in fact an "arriving alien" within section 1.1(q). If she is, we must then turn to the question of whether 8 C.F.R. § 245.1(c)(8), which precludes arriving aliens (including paroled aliens by definition) from applying for adjustment of status, is invalid because it is clearly contrary to the statute defining the categories of aliens who are eligible to apply for adjustment of status without restriction. 8 U.S.C. § 1255(a).

First, Delia argues that she is not an "arriving alien" within the meaning of 8 C.F.R. § 1.1(q). She bases this argument on the fact that she was paroled into the United States before April 1, 1997, and thus she claims to be specifically exempted from the definition of "arriving alien" under section 1.1(q).

The section states, in relevant part:

> An arriving alien remains such even if paroled pursuant to section 212(d)(5) [8 U.S.C. § 1182(d)(5)] of the Act, *except that an alien who was paroled before April 1, 1997*, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, *shall not be consid-*

---

Immigration Law Foundation. The Attorney General was also permitted to file a response to this brief. We find that a narrow exception allowing us to hear an issue raised for the first time on appeal applies in this case because this is a pure issue of law and the opposing party will not be prejudiced by its consideration. *See United States v. Antonakeas*, 255 F.3d 714, 721 (9th Cir. 2001).

*ered an arriving alien for purposes of section 235(b)(1)(A)(i) [8 U.S.C. § 1225(b)(1)(A)(i)] of the Act.*

8 C.F.R. § 1.1(q) (emphasis added).

[2] The regulation shows that an alien paroled under 8 U.S.C. § 1182(d) remains an "arriving alien" regardless of her parole status. The section also creates two exemptions from the definition of "arriving alien": 1) aliens paroled into the United States before April 1, 1997, and 2) aliens granted advance parole. However, a plain reading of the regulation clearly shows that both exceptions only exempt these aliens from the definition of "arriving alien" *for the purpose* of excluding them from expedited removal proceedings under 8 U.S.C. § 1225(b). Accordingly, Delia, as a parolee, was properly deemed an "arriving alien" within the meaning of section 1.1(q).

[3] As a parolee who is deemed an "arriving alien," Delia is specifically precluded by regulation from applying for adjustment of status. 8 C.F.R. § 245.1(c)(8). However, Delia argues that this regulation directly conflicts with 8 U.S.C. § 1255(a), which allows any alien who has been "inspected and admitted *or paroled*" into the country to apply for adjustment of status. (emphasis added). She specifically urges this court to follow *Succar*, which invalidated this regulation on this very basis.

We agree with the analysis and holding of *Succar*. Accordingly, we hold that because the "regulation redefines certain aliens as ineligible to apply for adjustment of status . . . whom a statute, 8 U.S.C. § 1255(a), defines as eligible to apply[,]" the regulation is invalid. *Succar*, 394 F.3d at 9.[5] Therefore, we

---

[5]At oral argument, the Attorney General attempted to distinguish *Succar* from the facts of this case because Delia's parole status had been revoked. However, the Attorney General did not provide any legal authority or

expressly adopt and follow the *Succar* decision and hold that 8 C.F.R. § 245.1(c)(8) is invalid.[6]

**[4]** In reviewing regulation section 245.8(c)(8) we apply the test set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under step one of the *Chevron* test, we must first ask whether Congress has spoken to the precise question at issue. *Id.* at 842; *Akhtar v. Burzynski*, 384 F.3d 1193, 1198 (9th Cir. 2004). "If Congress has done so, the inquiry is at an end; [we] must give effect to the unambiguously expressed intent of Congress." *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299, 1303 (9th Cir. 2004) (internal quotations and citations omitted). However, if we determine that Congress did not speak to the precise issue because the statute is either silent or ambiguous, we must go to step two in the *Chevron* analysis and consider the agency's interpretation. *See Chevron*, 467 U.S. at 843; *Akhtar*, 384 F.3d at 1198. Here, we ask whether the regulation enacted by the agency is a permissible construction of the statute. *Id.* If so, we must defer to the agency's interpretation. *Id.* This is a question of law reviewed de novo. *Id.*

---

analysis for why this distinction is significant. Furthermore, the Attorney General did not raise this argument again in either of his supplemental briefs filed with the court following oral argument. Therefore, it appears the argument has been waived by the government. However, even if it has not been waived, it is not disputed that Delia was "paroled" into the United States. Therefore, under the plain terms of section 1255(a), she would be eligible for adjustment of status regardless of whether her parole status ended or was revoked at a later time. *Cf. Tibke v. INS*, 335 F.2d 42, 45 (2d Cir. 1964) (noting that the adjustment of status statute as amended eliminated the requirement that the non-citizen's original status be maintained in order to be eligible for relief.)

[6]In reaching this conclusion, we have reviewed and considered *Mouelle v. Gonzales*, ___ F.3d ___, 2005 WL 17903137 (8th Cir. July 29, 2005) (2-1 decision), which recently rejected the *Succar* holding in a case very similar to the case at bar. However, we find the reasoning of *Succar* more persuasive and therefore reject the approach taken by the *Mouelle* court.

In *Succar*, the First Circuit directly confronted the identical issue presented by this appeal. 394 F.3d at 9. Wissam Succar, a native and citizen of Lebanon, was taken into custody by immigration officials at Miami International Airport after approaching an official at the airport and indicating that he wished to apply for asylum. *Id*. at 11. After an initial interview with immigration authorities, it was determined that Succar had a credible fear of future persecution and the facts provided by Succar were sufficient to establish his eligibility for asylum. *Id*. Succar was placed into removal proceedings and paroled into the United States. *Id*.

More than a year later at his removal hearing, Succar admitted the allegations in his Notice to Appear. He renewed his application for asylum, but the IJ denied it. Succar appealed to the Board of Immigration Appeals. *Id*.

While his appeal was pending, Succar married a United States citizen, who filed an immigrant visa petition on his behalf; the petition was approved. *Id*. Believing that he now met the statutory requirements for adjustment of status, Succar then filed a motion with the Board to remand his case to the IJ for consideration of his adjustment application. *Id*. His motion was granted. Before the IJ, the government took the position that 8 C.F.R. § 245.1(c)(8) prevented Succar from applying for adjustment of status. *Id*. The IJ denied the application for adjustment because of Succar's status as an arriving alien. *Id*. at 12. Succar's subsequent appeal to the Board was denied. *Id*.

**[5]** Succar challenged the validity of section 245.1(c)(8) on appeal to the First Circuit. After explaining in great detail the immigration laws and regulations pertaining to adjustment of status, parolees, and the changes brought about by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the court turned to the validity of section 245.1(c)(8). The court first addressed step one of the *Chevron* test — whether Congress had spoken to the precise question

at issue. *Chevron*, 467 U.S. at 842. The court determined that Congress had spoken to the precise issue of which aliens were eligible to apply for adjustment of status, specifically all aliens who were "inspected and admitted or paroled" into the country. *Succar*, 394 F.3d at 24 (quoting 8 U.S.C. § 1255(a)). Therefore, the court found that Congress had "reserved for itself the determination of whether a non-citizen should be able to apply for this relief." *Id*.

The court noted that Congress specifically defined who was eligible to apply for adjustment and that these categories had remained the same in spite of numerous amendments made to the statute since its initial enactment in 1960. *Id*. at 24 n.20. Additionally, aliens in these eligible categories are not restricted from seeking adjustment of status once placed in removal proceedings. *Id.* at 24.

**[6]** Next, *Succar* clarified that when Congress intended to limit those categories of aliens who were eligible to apply for adjustment, it explicitly did so. *Id*. at 25 (citing 8 U.S.C. § 1255(c)). Under section 1255(c), Congress specifically excluded several categories of aliens otherwise eligible from applying for adjustment of status. Furthermore, Congress has even provided for exceptions to these exclusions in certain classes of cases. *See* 8 U.S.C. § 1255(i).

**[7]** Next, the court engaged in a very thorough analysis of the larger statutory scheme. The court's analysis makes clear that Congress first determined that paroled aliens were to be considered "inadmissible" by statute. *Succar*, 394 F.3d at 26 (citing 8 U.S.C. § 1182(a)). However, in spite of their "inadmissible" status, Congress also made the clear policy choice that these aliens also should be eligible to apply for adjustment of status. 8 U.S.C. § 1255(a). The court went on to explain that based upon their "inadmissible" status, paroled aliens also would be placed in removal proceedings. *Succar*, 394 F.3d at 27 (citing 8 U.S.C. § 1225(b)(2)(A)). The decision to place these aliens in removal proceedings is not left to

the discretion of the Attorney General, but rather is mandated by the statute. *See* 8 U.S.C. § 1225(b)(2)(A). Thus, the *Succar* opinion points out:

> This context shows that Congress purposefully classified paroled individuals as "inadmissible," and it also determined that they should generally be placed in removal proceedings. But Congress also explicitly allowed paroled individuals to adjust status if they meet the other statutory requirements.

*Succar*, 394 F.3d at 27. Thus, a regulation that specifically excludes paroled aliens from applying for adjustment of status in removal proceedings directly conflicts not only with the specific statute on point, 8 U.S.C. § 1255(a), but creates absurd results when viewed in light of the larger statutory scheme.

We agree with the above analysis. But we must also point out the practical effect of the Attorney General's regulations with respect to adjustment of status applications made by parolees. Prior to the enactment of IIRIRA, a paroled alien was generally placed in exclusion proceedings as she was considered not to have "entered" the country. *See generally Landon v. Plasencia*, 459 U.S. 21, 25-26 (1982). Although exclusion proceedings limited the forms of relief available to individuals, paroled aliens were specifically allowed to apply to the district director having jurisdiction over their case while the exclusion proceedings were ongoing.[7] *In Re Castro-Padron*, 21 I. & N. Dec. 379, 379-380 (BIA 1996).

The enactment of IIRIRA changed this system. Gone were the days of "exclusion" proceedings and now paroled aliens were generally placed in "removal" proceedings. Based upon the Attorney General's regulation, a paroled alien may apply

---

[7]Such a paroled alien also could apply directly for adjustment to the district director if not placed in exclusion proceedings.

only to the district director for an adjustment. 8 C.F.R. § 245.2(a)(1). However, this is only true if the paroled alien is also not first placed in removal proceedings. *Id*. Based upon 8 C.F.R. § 245.1(c)(8), once the paroled alien (who is also classified as an "arriving alien") is placed in removal proceedings, the regulation precludes any application for adjustment of status, including a direct application to the district director. 8 C.F.R. § 245.2(a)(1); 8 C.F.R. § 245.1(c)(8); *Succar*, 394 F.3d at 18. This is a break from the prior procedure and it is this aspect of section 245.1(c)(8) which proves fatal. By entirely excluding a category of aliens from the ability to apply for adjustment, who by statute are eligible to apply for such relief, the regulation goes beyond simply regulating the manner in which such applications shall be made or the discretionary decision to grant such relief. Rather, the regulation strips statutory eligibility for such relief *in any form* from this entire category of aliens once they are placed in removal proceedings. The statute provides for no such restriction. Furthermore, the larger statutory context does not provide the Attorney General with the discretion to make such a choice.

**[8]** Although Congress delegated to the Attorney General the discretionary authority to grant or deny an application for an adjustment of status, 8 U.S.C. § 1255(a), Congress did not delegate to the Attorney General the discretion to choose who was *eligible to apply* for such relief. Thus, we agree with the First Circuit that Congress has spoken to the precise issue of who is eligible to apply for adjustment of status and that 8 C.F.R. § 245.1(c)(8) is directly contrary to this Congressional determination. *Succar*, 394 F.3d at 29. Therefore, the inquiry is at an end, *see Morales-Izquierdo v. Ashcroft*, 388 F.3d at 1303, and section 245.1(c)(8) is invalid. The petitioner is eligible for adjustment of status.[8]

(Text continued on page 13733)

---

[8]This case is both factually and legally distinguishable from *Jiang v. Gonzales*, No. 03-71837 (9th Cir. filed Sept. 23, 2005) and therefore, not controlled by its result. First, the circumstances of Jiang's arrival and initial stay in the United States are completely different. Jiang initially was

allowed to travel through the country after receiving the "transit-without-visa" privilege. However, his inadvertence at an airport resulted in his staying in the United States after failing to board a flight back to China. After his initial arrival, Jiang *voluntarily* applied for and was granted advance parole. Upon his return from China, Jiang was paroled into the United States. Delia, on the other hand, was compelled to come to this country and evacuate the Philippines by the United States military. Upon her arrival, she was given parole. She was neither given a choice in the matter nor was she made aware of the consequences of her parole status.

Second, although Jiang and Delia were both "paroled" aliens, who were subsequently categorized as "arriving aliens" under 8 C.F.R. § 1.1(q), and were limited in obtaining adjustment of status in removal proceedings, the posture of their adjustment applications is completely different. Jiang was attempting to *renew* his previously denied adjustment application in removal proceedings, whereas Delia was attempting to make a completely new application. As a result, Jiang and Delia attack entirely different regulations on appeal.

Delia challenges 8 C.F.R. § 245.1(c)(8), which precludes arriving aliens from making a new or initial application for adjustment of status in removal proceedings. In contrast, Jiang challenges 8 C.F.R. § 1245.2(a), which precludes an arriving alien from *renewing* a previously denied application for adjustment of status in removal proceedings. Unlike the regulation attacked in this case, 8 C.F.R. § 1245.2(a) does not entirely preclude paroled aliens (who are deemed arriving aliens) from their statutory eligibility to apply for adjustment. Rather, the regulation merely defines the manner in which a previously denied application can be *renewed*. This difference is significant.

Section 245.1(c)(8) entirely precludes a class of aliens, paroled aliens, who by statute are eligible to apply for adjustment of status, from making any such application once they are placed in removal proceedings. *See* 8 U.S.C. § 1255(a). This is different from precluding a paroled alien, who is also an arriving alien, from *renewing* a previously denied application. Unlike Delia, Jiang was eligible to apply for adjustment and did apply, but was denied relief. Thus, section 1245.2(a) does not strip the ability of an otherwise eligible class of aliens from applying for adjustment of status in any way. Therefore, the conclusion in *Jiang* that 8 C.F.R. § 1245.2(a) does not violate 8 U.S.C. § 1255(a) is correct. However, the determination of whether section 1245.2(a) is consistent with the statute is inapposite to the issue of whether section 245.1(c)(8) is valid. As *Jiang* is distinguishable from the case at bar both factually and legally it is not controlling.

Accordingly, we GRANT the petition for review and REMAND this case to the Board for further proceedings consistent with this opinion.