United States Court of Appeals
Fifth Circuit

F I L E D

April 24, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-60119

_____

AMIN MEMANJI MOMIN,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

In this petition for review of an order of the Board of Immigration Appeals ("BIA"), Petitioner contends that his application for adjustment of status was denied pursuant to an invalid regulation. For the reasons that follow, the petition for review is denied.

I.      FACTS AND PROCEEDINGS

Petitioner, Amin Memanji Momin ("Momin"), is a native and citizen of India. He first entered the United States in March 1996 as a non-immigrant on a student visa. Momin temporarily left the United States and reentered as a parolee in December 2000 to pursue a family-based visa application

- 1 -

filed by his U.S.-citizen wife and his application for adjustment of status; Momin sought lawful

permanent resident ("LPR") status. The Immigration and Naturalization Service ("INS") denied

Momin's family-based application for a visa and his application for adjustment of status on October

16, 2002.[1] On October 24, 2002, Momin was charged as being removable, pursuant to 8 U.S.C. §

1182(a)(7)(A)(i)(I), because he did not possess a valid entry document.

Before the immigration judge ("IJ"), Momin conceded the charges, *i.e.*, that he was an

arriving alien and not in possession of proper immigration documentation. During the hearing,

however, Momin indicated that he intended to file an employment-based application in support of his

adjustment of status application and asked for a six-week continuance. The IJ granted the

continuance. Two days after the hearing, the INS filed a motion to pretermit Momin's application

for adjustment of status. In its motion, the INS contended that, under 8 C.F.R. § 1245.1(c)(8),[2] an

---

[1]The family-based application for Momin's visa and Momin's application for adjustment of status were denied because Momin failed to attend his fingerprinting appointment for his status adjustment application. The INS deemed the application abandoned. Momin divorced his U.S.-citizen wife in July 2002.

[2]8 C.F.R. § 245.1 provides:

(a) General. Any alien who is physically present in the United States, except for an alien who is ineligible to apply for adjustment of status under paragraph (b) or (c) of this section, may apply for adjustment of status to that of a lawful permanent resident of the United States if the applicant is eligible to receive an immigrant visa and an immigrant visa is immediately available at the time of filing of the application.

. . .

(c) Ineligible aliens. The following categories of aliens are ineligible to apply for adjustment of status to that of a lawful permanent resident alien under section 245 of the Act:

. . .

(8) Any arriving alien who is in removal proceedings pursuant

arriving alien is ineligible to apply for an adjustment of status. Momin did not oppose the motion and, on May 12, 2003, the IJ ordered that the INS's motion to pretermit Momin's application for adjustment of status be granted.

A month later, Momin filed a motion to reconsider the IJ's order. Momin contended that he was not an arriving alien: According to Momin, he met the exception to the definition of an arriving alien because he "was granted advance parole . . . in the United States prior to [his] departure from and return to the United States." 8 C.F.R. § 1.1(q) (defining "arriving alien"). Momin further argued that, under 8 C.F.R. § 245.2(a)(1)(i) and (ii), he should be permitted to renew his application for adjustment of status after substituting his employment-based visa application for his family-based application. Momin's argument focused on the facts that, (1) regardless of the type of visa petition (*i.e.*, family-based or employment-based) used to support the application, the application for adjustment of status remained largely the same, and (2) the regulation permitted the renewal of the "adjustment application," not a particular visa petition.

The INS responded by asserting that an applicant may substitute visa petitions only when the petition has not been adjudicated. Where the application has been considered but denied, the INS argued, the applicant was limited to renewing the application as filed. The INS urged the IJ to consider the employment-based application as a new application.

to section 235(b)(1) or section 240 of the Act. . . .

8 C.F.R. § 245.1.

8 C.F.R. § 245.1 is identical to § 1245.1. Section 245.1 applies to the immigration agencies in the Department of Homeland Security ("DHS") and §1245.1 applies to the Executive Office for Immigration Review in the Department of Justice. In March 2003, the relevant functions of the INS were transferred to the DHS. Regardless, the functions and the regulation in question remain the same; for the sake of clarity, we refer to the regulation as 8 C.F.R. § 245.1 and the immigration agency as the INS throughout. *See Lopez v. Henley*, 416 F.3d 455, 456 n.1 (5th Cir. 2005).

- 3 -

The IJ agreed with the INS and, on July 10, 2003, issued an order denying the motion to reconsider and directing that Momin be removed. The IJ addressed Momin's argument: "[Momin] seeks to have a second application for adjustment of status, based on an employment-based visa petition, reviewed and approved by the Court in the instant proceedings. However, nothing in the regulations allows an alien to substitute an application with another [visa] petitioner." Based on its determination that Momin was an arriving alien and that the original adjustment of status application had not been renewed, the IJ cited, *inter alia*, 8 C.F.R. § 245.1(c)(8) for the proposition that Momin was "ineligible for adjustment of status in these removal proceedings."

On July 1, 2004, Momin appealed the IJ's order to the BIA and asserted basically the same application renewal argument. In response, the INS moved for summary affirmance, arguing that the IJ had correctly determined that, under 8 C.F.R. § 245.1(c)(8), Momin was not eligible for an adjustment of status. The BIA agreed with the INS, adopted the IJ's July 10, 2003, order, and dismissed Momin's appeal. In addition, the BIA made the following express findings: (1) Momin was ineligible for adjustment of status under 8 C.F.R. § 245.1(c)(8); (2) Momin was not within the exception to the definition of "arriving alien" for one who has been paroled; and (3) Momin's employee-based application was different from, not a renewal of, his family-based application for adjustment of status and, therefore, he was ineligible to adjust status under 8 C.F.R. § 245.2(a)(1). Momin did not seek judicial review of the BIA's decision.

On December 9, 2004, Momin filed a motion to reconsider the BIA's decision, which the INS opposed. Momin asserted that he was not an arriving alien, based on the definition of that term in 8 C.F.R. § 1.1(q). The INS pointed out that the exception Momin relied on applied only to paroled aliens in expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A)(i), codifying Immigration

and Nationality Act ("INA") § 235(b)(1)(A)(i).  Momin was not in an expedited removal proceeding; rather, Momin's removal proceeding was pursuant to 8 U.S.C. § 1229a, codifying INA § 240. Accordingly, the INS continued, Momin was an arriving alien and, as such, ineligible to apply for adjustment of status to LPR.  By order dated January 26, 2005, the BIA denied Momin's motion for reconsideration.  The BIA held, in accord with 8 C.F.R. § 245.1(c)(8), that Momin was an arriving alien and barred from adjustment of status because of the pending removal proceedings.

On January 24, 2005, two days before the BIA issued its order denying Momin's motion to reconsider, Momin mailed a pleading titled "Supplement to the Respondent's Motion to Reconsider the Board's Decision" to the BIA.  In this supplemental motion, Momin urged the BIA to consider the First Circuit's opinion in *Succar v. Ashcroft*, 394 F.3d 8, 36 (1st Cir. 2005), which concluded that 8 C.F.R. § 245.1(c)(8) was inconsistent with 8 U.S.C. § 1255(a) and, therefore, could not be relied on to support a removal order.  The INS maintains that it did not receive Momin's supplemental motion in time to consider it and did not include it in the administrative record.[3]  Momin now petitions this court to review the BIA's denial of his motion for reconsideration.

II.    STANDARD OF REVIEW

This court reviews the BIA's denial of a motion for reconsideration for abuse of discretion. *Zhao v. Gonzales*, 404 F.3d 295, 301 (5th Cir. 2005).  The BIA's "'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B) and noting that the provision codified the substantial evidence test established in *INS v. Elias-Zacarias*, 502 U.S. 478,

---

[3]This court granted Momin's motion to supplement the record with his supplemental motion pursuant to FED. R. APP. P. 16(b).

- 5 -

481 (1992)).

With respect to pure questions of law, legal conclusions are reviewed de novo. *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004). But, where appropriate under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), the BIA's interpretation of an ambiguous provision of the INA is entitled to deference.[4] *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006). *Chevron* deference is also appropriate where the BIA interprets its own regulations. *Id*. (citing *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003)).

III.    DISCUSSION

The sole question presented in Momin's petition for review, and the only argument under consideration,[5] is the argument addressed in his January 24 supplemental motion. Momin contends that 8 C.F.R. § 245.1(c)(8), which deems arriving aliens, who are in removal proceedings, ineligible to apply for adjustment of status to LPR, is invalid. According to Momin, because the regulation conflicts with the underlying statute, 8 U.S.C. § 1255(a), it cannot be used to bar his application for adjustment of status. If Momin's status adjustment application is valid, the argument continues, Momin is not subject to removal. Momin's entire argument turns on the regulation's validity. Before addressing the merits of his claim, we must first consider the INS's position that Momin waived his argument by failing to present it timely to the BIA.

---

[4]Under *Chevron*, clear congressional directives bind the court and agency alike. *Salazar-Regino v. Trominski*, 415 F.3d 436, 443 (5th Cir. 2005). "If, however, the court determines Congress has not directly addressed the precise question at issue," a measure of deference, termed *Chevron* deference, is afforded the agency, and "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

[5]Because no other aspects of Momin's arguments before the BIA and IJ are briefed in his petition for review, Momin has waived them. *Salazar-Regino*, 415 F.3d at 452 & n.28.

A.      Failure to Raise the Argument with the BIA

The INS argues in its brief that the BIA's decision was formed without the benefit of Momin's supplemental argument and that, because he did not timely raise the argument with the BIA, it is waived.[6]  We have addressed the failure of a petitioner to seek relief before the BIA:  "When a petitioner seeks to raise a claim not presented to the BIA and the claim is one that the BIA has adequate mechanisms to address and remedy, the petitioner must raise the issue in a motion to reopen prior to resorting to review by the courts."  *Goonsuwan v. Ashcroft*, 252 F.3d 383, 390 (5th Cir. 2001).  Momin contends that there are no "adequate mechanisms to address and remedy" his claim before the BIA because the BIA lacks jurisdiction to consider the validity of regulations promulgated under the INA.

The BIA has stated that regulations promulgated under the INA "have the force and effect of law as to [the BIA] and the Immigration Judges."  *In re Shanu*, 23 I. & N. Dec. 754, 758 (BIA 2005) (citing *In re Fede*, 20 I. & N. Dec. 35, 36 (BIA 1989)).  Momin's argument is supported by several unpublished BIA decisions in which the BIA declined to follow *Succar* because the regional court of appeals had not adopted the *Succar* reasoning and the BIA remained bound by the regulations.  *See, e.g., In re Toussaint*, No. A96 001 425, 2006 WL 211046 (BIA 2006) (unpublished); *In re Meza-Cota*, No. A76 030 224, 2005 WL 3802109 (BIA 2005) (unpublished); *In re Cheng*, No. A70 583 458, 2005 WL 698333 (BIA 2005) (unpublished).

The question presented is purely a matter of law.  Under our waiver jurisprudence, the failure to raise such an issue below does not necessarily subject it to waiver:  This court may exercise its

---

[6]We assume that the BIA did not have Momin's supplemental motion when it denied his motion for reconsideration.

discretion to consider pure issues of law not raised below. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 338 n.5 (5th Cir. 2004). *See also Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1293 (5th Cir. 1986) ("An issue raised for the first time on appeal generally is not considered unless it involves a purely legal question or failure to consider it would result in a miscarriage of justice."). Accordingly, we will consider this pure legal issue—the validity of 8 C.F.R. § 245.1(c)(8).

### B. Validity of 8 C.F.R. § 245.1(c)(8)

#### 1. Statutory and Regulatory Framework

Momin contends that 8 C.F.R. § 245.2(c)(8) conflicts with 8 U.S.C. § 1255(a). Before we focus on the contested regulation, however, a broader perspective of the INA and its statutory and regulatory framework is required. Under the now-existing version of the INA, aliens fall into one of two classes: admitted aliens and applicants for admission. The former class is composed of only those aliens who lawfully entered the United States after inspection and authorization by an immigration officer. *See* 8 U.S.C. § 1101(a)(13)(A). The latter class includes those aliens who are present in the United States but have not been admitted. *See* 8 U.S.C. § 1225(a)(1). By regulation, the Attorney General created a sub-class of applicants for admission, the arriving alien.[7] *See* 8 C.F.R. § 1.1(q). For the purposes of our analysis, an arriving alien is the same as an applicant for admission. *See id*.

Parolees constitute another sub-class of applicants for admission: A parolee is an applicant

---

[7]We describe arriving aliens as a sub-class of applicants for admission because the regulation defines arriving aliens as applicants for admission and then narrows the class by designating exceptions not pertinent to this analysis. *See* 8 C.F.R. § 1.1(q). For our purposes, the terms are interchangeable.

for admission who has been permitted temporarily into the United States by an exercise of the Attorney General's discretion. *See* 8 U.S.C. § 1182(d)(5)(A). Although a parolee is permitted physically to enter the United States, for the purposes of his immigrant status the parolee remains an applicant for admission and, if parole is revoked, is subject to whatever actions might be appropriate for any other applicant for admission. *See id.*; 8 U.S.C. § 1101(a)(13)(B) ("An alien who is paroled . . . shall not be considered to have been admitted."). Moreover, an arriving alien remains an arriving alien, even if paroled into the United States. *See* 8 C.F.R. § 1.1(q). An alien who arrives in the United States on advance parole, as did Momin, is nevertheless an arriving alien. *See id. See also In re Oseiwusu*, 22 I. & N. Dec. 19 (BIA 1998). Accordingly, parole allows an alien physically to enter the United States but does not affect the alien's status within the immigration framework.

Another piece of the statutory framework is the concept of removal. For an applicant for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." 8 U.S.C. § 1225(b)(2). All aliens—admitted aliens and applicants for admission—could be subject to removal. *See* 8 U.S.C. §§ 1182(a) (listing classes of aliens ineligible for visas or admission and, therefore, subject to removal), 1227(a) (listing classes of deportable aliens subject to removal). Being subject to removal does not necessarily result in removal; the removal proceeding is simply the mechanism by which the question of admissibility is adjudicated.

The final noteworthy piece of the statutory framework is the concept of status. As a general rule, though subject to numerous exceptions, aliens have immigrant status. *See* 8 U.S.C. § 1101(a)(15) (listing many classes of non-immigrant aliens). Non-immigrants are those aliens who seek admittance for purposes other than immigration. *Id*. An alien who has been "lawfully accorded

the privilege of residing permanently in the United States" has LPR status. 8 U.S.C. § 1101(a)(20). An LPR is not "regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien" violates the conditions of the status. 8 U.S.C. § 1101(a)(13)(c).

Armed with an understanding of the statutory framework, we turn to the statute and regulation at issue. The underlying concern is Momin's eligibility to seek an adjustment of status to LPR. Section 1255(a) provides that the status of an alien who has been paroled into the United States may be adjusted to LPR status at the discretion of, and pursuant to regulations promulgated by, the Attorney General:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Under this statutory provision, the class of admitted aliens and the class of paroled applicants for admission may, at the discretion of the Attorney General, have their status adjusted to LPR.

The regulation in question severs a sub-class of aliens—those who are both "arriving aliens" (including those paroled into the United States) and in removal proceedings—from the class of parolees eligible for adjustment of status to LPR. Under the regulation, this sub-class of aliens is ineligible to apply for status adjustment. *See* 8 C.F.R. § 245.1(c)(8). Momin challenges the validity of the regulation as contrary to the statutory framework.

2.      Sister Circuits' Jurisprudence

We do not consider this question in a vacuum. The parties briefed the First Circuit's holding in *Succar*. Since the First Circuit first spoke, the Third Circuit, the Ninth Circuit, two panels from the Eighth Circuit, and, most recently, the Eleventh Circuit have had occasion to address the question we consider. The five circuits to address the issue have reached dissimilar results with even more dissimilar reasoning. And while these well-reasoned opinions lack uniformity, they provide analysis and research which we carefully consider.

a.      Invalid under *Chevron* Step One

In *Succar*, the First Circuit, performing a *Chevron* step one analysis, considered the statutory text and the context of the statutory scheme to determine that Congress had spoken clearly to aliens' eligibility for status adjustment and that the regulation's additional limitation on the eligible class was "inconsistent with that congressional determination." 394 F.3d at 29. The First Circuit later referred to the statute's legislative history to confirm its reading of the statute. *Id*. at 32.

In its plain-language review of the statute, the *Succar* panel found that Congress had "defined certain categories of aliens who were eligible to apply for adjustment of status, . . . and refined the definition by specifically excluding certain aliens from eligibility." *Id*. at 24. Because of the express pronouncements in § 1255 regarding eligibility for status adjustment, the First Circuit held that "Congress unambiguously reserved to itself the determination of who is eligible to apply for adjustment of status relief." *Id*. The regulation's limitation on parolees' eligibility conflicts with the statute's plain language, according to the *Succar* court.

When the First Circuit considered the context of the statutory scheme, it drew two conclusions. The *Succar* court first determined that "the exclusion of parolees in removal

proceedings renders ineligible most of the class that Congress rendered eligible by including parolees." *Id*. at 26. Second, the court stated that "the congressional choice to delegate to the Attorney General some circumscribed discretion over the ultimate decision of who is granted adjustment of status is not authorization for discretion in other areas." *Id*. (footnote omitted). These conclusions compelled the court to deem the regulation invalid.

The first conclusion was based, in part, on the court's factual understanding that "most arriving alien parolees are placed in removal proceedings." *Id*. at 18. This representation was made to the court and not disputed by the Attorney General. *Id*. at 21. Also, the court noted that an applicant for admission who cannot demonstrate admissibility "clearly and beyond a doubt" must be placed in removal proceedings. *Id*. at 27 (discussing 8 U.S.C. § 1225(b)(2)(A)). This view of the operation of the INA as a whole and of the practical effect of the regulation led the *Succar* court to find that the regulation's carve-out improperly subsumed the congressional grant of eligibility to the parolee class of aliens.

The First Circuit's second conclusion—addressing the Attorney General's discretion—was a response to the argument that the Attorney General may exercise his discretion by rulemaking rather than case-by-case adjudication pursuant to *Lopez v. Davis*, 531 U.S. 230 (2001). In *Lopez*, the Supreme Court upheld a regulation of the Bureau of Prisons (the "Bureau") categorically denying early release for certain prisoners as an appropriate exercise of the Bureau's discretion. 531 U.S. at 233. The authorizing statute in question in *Lopez* eliminated a class of prisoners from eligibility for early release and left the release determination of other prisoners to the discretion of the Bureau. *Id*. at 238–41 (discussing 18 U.S.C. § 3621(e)(2)(B)). The Court determined that, aside from excluding a class of prisoners from eligibility for the reduction in sentence, "Congress ha[d] not identified any

further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." *Id*. at 242. Because the Bureau ultimately was vested with discretion to decide on the prisoners' release, the Court held that the Bureau was within its authority to exclude categorically classes of prisoners by rule: "The Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceeding.'" *Id.* at 244 (quoting *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). The First Circuit distinguished *Lopez*, asserting that, in the statute at issue in *Lopez*, Congress had been silent and that was not the case with respect to the INA. *Succar*, 394 F.3d at 29. Accordingly, the *Succar* court deemed the Attorney General's resort to rulemaking contrary to the plain language of the statute. *Id*.

Having concluded that the text and statutory structure conflicted with the regulation, the *Succar* court reviewed the INA's legislative history. Congress, the First Circuit determined, intended to eliminate unnecessary trips out of the United States in order to be eligible to apply for admission. *Id*. at 33–34 (discussing S. REP. No. 86-1651 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3124, 3125). Based on this review of the legislative history, the First Circuit concluded that the regulation actually recreated a problem that Congress intended to eliminate when enacting the statute because, under the regulation, parolees subject to removal would have to leave the country to become eligible to adjust status. *Id.* at 34. As the legislative history confirmed its understanding of the statute's language and context, the First Circuit declared 8 C.F.R. § 245.1(c)(8) invalid under *Chevron* step one and vacated the BIA's removal order. *Id*. at 34, 36. The Ninth Circuit, in *Bona v. Gonzales*, 425 F.3d 663, 668 (9th Cir. 2005), expressly adopted and followed *Succar*.

b.     Invalid under *Chevron* Step Two

The Third Circuit also invalidated 8 C.F.R. § 245.1(c)(8) but did so under *Chevron* step two.

- 13 -

*Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005). The Third Circuit disagreed with the First Circuit's conclusion that *Lopez* did not govern the *Chevron* step one result. *Id*. at 116. The *Zheng* court, applying *Lopez*, stated that "[t]he fact that Congress declared some categories of aliens ineligible for adjustment by statute does not in itself conclusively prove that the Attorney General cannot declare other categories ineligible by regulation." *Id*.

Moving to the second step of *Chevron*, the *Zheng* court noted that if the regulation was to survive, it would have to be both "'reasonable in light of the legislature's revealed design'" and "'based on a permissible construction of the statute.'" *Id*. (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995), and *Chevron*, 467 U.S. at 843). Looking to the operation of the INA as a whole the *Zheng* court determined "that virtually all parolees will be in removal proceedings." *Id*. at 117. In addition to considering *Succar*, the *Zheng* court found that the statutory structure was such that "parolees will, by default, be in removal proceedings." *Id*. Based on this understanding of the INA's operation, the Third Circuit determined "that Congress intended that the mere fact of removal proceedings would not render an alien ineligible to apply for adjustment of status." *Id.* at 118.

According to the *Zheng* court, 8 C.F.R. § 245.1(c)(8) "rendered most aliens paroled into the United States ineligible to apply for adjustment of status." *Id*. Although the Government contended that some aliens in removal proceedings might be eligible to adjust status, the Third Circuit deemed the exception too narrow to capture congressional intent that parolees be able to apply for status adjustment. *Id*. at 119. Ultimately, the *Zheng* court stated that "[f]or all practical purposes, . . . 8 C.F.R. § [245.1(c)(8)] renders paroled aliens ineligible to apply for adjustment of status." *Id*. Based on its practical understanding of the statute's function and the effect of the regulation, the *Zheng*

court concluded that "[t]he conflict between regulation and statute is clear and unmistakable." *Id.* As such, the regulation, which, according to the Third Circuit, "essentially reverses the eligibility structure set out by Congress," was held invalid under *Chevron* step two. *Id.* at 120.

Recently, the Eleventh Circuit, in *Scheerer v. U.S. Attorney General*, — F.3d —, Nos. 04-16231 & 05-11303, 2006 WL 947680, at *7 (11th Cir. Apr. 13, 2006), followed the *Zheng* court's reasoning and held 8 C.F.R. § 245.1(c)(8) invalid. The Eleventh Circuit adhered to *Lopez* and held that the Attorney General may exercise his discretion by rulemaking in lieu of adjudication. *Scheerer*, 2006 WL 947680, at *7. The *Scheerer* court, like *Succar*, *Bona*, and *Zheng*, based its conclusion on an understanding that "[t]he vast majority of aliens paroled into the United States will . . . be in removal proceedings by virtue of the statutory scheme." *Id.* at *7.

### c. Valid under *Chevron*

The Eighth Circuit is the only circuit court to deem 8 C.F.R. § 245.1(c)(8) valid, and it has done so in a pair of opinions; each opinion drew a dissent arguing in favor of invalidating the regulation. *See Mouelle v. Gonzales*, 416 F.3d 923, 930 (8th Cir. 2005); *Geach v. Chertoff*, — F.3d —, No. 05-1405, 2006 WL 508101, at *2–3 (8th Cir. Mar. 3, 2006) (following *Mouelle*). The *Mouelle* court, like both *Zheng* and *Scheerer*, followed the Supreme Court's directive in *Lopez* and recognized that the Attorney General's use of rulemaking was "not invalid as contrary to the statute." 416 F.3d at 930.

Having satisfied itself with the manner of regulation, the *Mouelle* court followed *Lopez* and inquired whether the gap-filling regulation was "'reasonable in light of the legislature's revealed design.'" *Id.* (quoting *Lopez*, 531 U.S. at 242). At this point, the Eighth Circuit referred to the Attorney General's commentary in promulgating the regulation, which indicated that the regulation

responded to congressional intent to expedite removal and avoid lengthening removal proceedings. *Id*. (citing Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10,312, 10,312–13, 10,326–27 (Mar. 6, 1997) (interim rule with request for comments) ("Interim Rule")). The *Mouelle* court noted the broad discretion granted the Attorney General in the statute and determined that the fact that an arriving alien is in a removal proceeding "is a characteristic that is a reasonably sound basis for choosing not to grant relief under 8 U.S.C. § 1255[(a)]." *Id*. To the contention in *Succar* (and the same contention later in *Zheng*, *Bona*, and *Scheerer*) that the regulation renders an entire class of aliens—intended by Congress to be eligible for status adjustment—ineligible for status adjustment, the *Mouelle* court responded:

> The court in *Succar* opined that the relevant characteristic—placement in removal proceedings—effectively barred most aliens who had been paroled from adjusting status because most paroled aliens were in removal proceedings. Thus, the court concluded, the regulation was contrary to 8 U.S.C. § 1255(a) because paroled aliens were among those eligible to adjust status under the statute. As an evidentiary matter, we cannot conclude that the regulation bars most paroled aliens from adjusting status. Unlike the court in *Succar*, we have not been "informed," of that fact. And in this case the Attorney General cites DHS statistics suggesting that only about two to three percent of parolees who entered the United States in 2003 have been placed in removal proceedings. In fact, the INS did not initiate removal proceedings against the Mouelles until April 15, 1998, over ten months after the Mouelles were paroled into the United States. Moreover, even if we assumed that most aliens paroled into the United States were placed in removal proceedings, 8 U.S.C. § 1255 does not show a congressional intent to vest a few, most, or all paroled aliens with the right to adjust their status. Relief remains discretionary.

*Id*. at 930 n.9 (internal citations omitted). Because the regulation was, according to the Eighth Circuit, a valid exercise of expressly-granted discretion, the court upheld 8 C.F.R. § 245.1(c)(8).

3.      Analysis

We agree with the Eighth Circuit that 8 C.F.R. § 245.1(c)(8) is a valid exercise of the discretion granted by Congress to the Attorney General. For the reasons that follow, we respectfully disagree with both the *Succar* and *Zheng* lines of reasoning. In determining the validity of the regulation, we must answer two questions: (1) whether the Attorney General was entitled to implement a rule rather than adjudicate status adjustments on a case-by-case base; and, (2) if so, whether the rule promulgated was arbitrary, capricious, or manifestly contrary to the statute. In sum, we hold that the Attorney General may choose to exercise his discretion favorably or unfavorably by rulemaking rather than adjudication. Moreover, we hold that the categorical exclusion expressed in 8 C.F.R. § 245.1(c)(8) is a valid exercise of the Attorney General's congressionally-granted discretion.

a.       Exercise of Discretion by Rulemaking

Of the courts of appeals to consider this issue, the Third, Eighth, and Eleventh Circuits all agree, as do we, that the Attorney General may exercise his discretion by rulemaking rather than case-by-case adjudication. Congress identified classes of aliens that may have their status adjusted at the Attorney General's discretion, *see* 8 U.S.C. § 1255(a), and Congress also identified various sub-classes of aliens that are ineligible for status adjustments, *see, e.g.,* 8 U.S.C. § 1255(c). The First and Ninth Circuits found these tandem congressional mandates sufficient to conclude that "Congress unambiguously reserved to itself the determination of who is eligible to apply for adjustment of status relief," and that an additional rule-based limitation on an alien's eligibility to apply was contrary to that clear statement of intent. *Succar*, 394 F.3d at 24. *See also Bona*, 425 F.3d at 670.

But Congress did not clearly express an intent to withhold the Attorney General's authority to resolve matters of general applicability through rulemaking. Absent such an exclusion, resort to

rulemaking is within the discretion afforded the Attorney General. *See Am. Hosp. Ass'n v. N.L.R.B.*, 499 U.S. 606, 612 (1991) (noting that resort to rulemaking is proper even where the statute requires the agency to make a determination "in each case"). Moreover, the fact that Congress chose to exclude certain classes of aliens from eligibility does not mean that, where complete discretion to grant relief is vested in the Attorney General, the Attorney General cannot opt to exercise the discretion and exclude other classes by regulation. *Accord Mouelle*, 416 F.3d at 928–29; *Zheng*, 422 F.3d at 116; *Geach*, 2006 WL 508101, at *3; *Scheerer*, 2006 WL 947680, at *7.

Indeed, the Supreme Court's holding in *Lopez* compels this conclusion:

> We also reject [the] argument . . . that the agency must not make categorical exclusions, but may rely only on case-by-case assessments. "[E]ven if a statutory scheme requires individualized determinations," which this scheme does not, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." The approach pressed by Lopez—case-by-case decisionmaking in thousands of cases each year—could invite favoritism, disunity, and inconsistency. The [agency] is not required continually to revisit "issues that may be established fairly and efficiently in a single rulemaking proceeding."

531 U.S. at 243–44 (internal citations omitted). *See also Mourning v. Family Publ'ns. Serv., Inc.*, 411 U.S. 356, 372 (1973) (rejecting a similar argument and commenting that "[t]o accept [the] argument would undermine the flexibility sought in vesting broad rulemaking authority in an administrative agency").

In any event, we need not guess at the Attorney General's motivation. The Attorney General's commentary accompanying the rule as promulgated makes clear that the regulation is a categorical exercise of discretion: "Adjustment of status is granted in the discretion of the Attorney General. . . . [T]he Attorney General has determined that she will not favorably exercise her

- 18 -

discretion to adjust the status of arriving aliens who are . . . placed in removal proceedings." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 444, 452 (Jan. 3, 1997) (proposed rule) ("Proposed Rule"). *See also* Interim Rule, 62 Fed. Reg. at 10,327 ("In response to the commenters who suggested this policy exceeded the Attorney General's statutory authority, it is noted that section 245 of the Act clearly and unambiguously states that adjustment of status is a discretionary decision, subject to such regulatory limitations as the Attorney General may prescribe."). The Attorney General's approach is entirely consistent with that taken by the agency—and approved of by the Court—in *Lopez*. We follow *Lopez* and conclude that, because 8 U.S.C. § 1255(a) is silent on the manner in which the Attorney General is to exercise his discretion, the Attorney General can exercise his discretion through rulemaking in matters of general applicability. 531 U.S. at 244. *Accord Mouelle*, 416 F.3d at 928–29; *Zheng*, 422 F.3d at 116; *Geach*, 2006 WL 508101, at *3; *Scheerer*, 2006 WL 947680, at *7.

b.      Exclusion of Arriving Aliens in Removal Proceedings

Having concluded that the Attorney General validly exercised his discretion by rulemaking, we now turn to the substance of the rule. "When Congress expressly delegates to an administrative agency the authority to make specific policy determinations, courts must give the agency's decision controlling weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 324 (1994) (quoting *Chevron*, 467 U.S. at 844). Although one of the discussed cases characterizes the discretion vested in the Attorney General as "circumscribed," *Succar*, 394 F.3d at 26, we find no support for such limiting language in the statute. *See* 8 U.S.C. § 1255(a) (providing that the status of an alien "may be adjusted [to LPR] by the Attorney General, in his discretion and under such regulations as he may prescribe"). The Supreme

Court has noted that "express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed" is indicative of an entitlement to deferential treatment by reviewing courts. *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). The statute clearly vests in the Attorney General such authority to promulgate regulations. *See* 8 U.S.C. § 1255(a). Additionally, the Supreme Court has "recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *I.N.S. v. Abudu*, 485 U.S. 94, 110 (1988)).

The courts that deem 8 C.F.R. § 245.1(c)(8) invalid all share a common trait; they equate the entire class of parolees with the sub-class of parolees who are subject to removal proceedings. *See Succar*, 394 F.3d at 21, 26 (basing its understanding on an uncontested petitioner's statement); *Zheng*, 422 F.3d at 117–18 (basing its belief on *Succar* and the statutory structure); *Bona*, 425 F.3d at 670 (basing its understanding on *Succar* and the court's view of the "practical effect" of the regulation); *Scheerer*, 2006 WL 947680, at *7–8 (basing its belief on *Succar* and the statutory structure). Because the regulation makes the latter class ineligible for relief and the statute makes the former class eligible for relief (though subject to the Attorney General's discretion), those circuits understand the regulation to be in conflict with the statute and overall statutory design. *See Succar*, 394 F.3d at 21, 26 ("[T]he exclusion of parolees in removal proceedings renders ineligible most of the class that Congress rendered eligible by including parolees."); *Zheng*, 422 F.3d at 119 ("We are thus faced with a statute providing that, in general, aliens paroled into the United States may apply to adjust their status, and a regulation providing that, in general, they may not."); *Bona*, 425 F.3d at

670 ("By entirely excluding a category of aliens from the ability to apply for adjustment, who by statute are eligible to apply for such relief, the regulation [is invalid]."); *Scheerer*, 2006 WL 947680, at *8 ("Thus, whereas the statute, § 1255, contemplates that parolees—arriving aliens, virtually all of whom are placed in removal proceedings—should be eligible to apply for an adjustment of status, the regulation, 8 C.F.R. § [245.1(c)(8)], excludes the same class from eligibility."). This estimation as to the practical effect of the regulation and the statutory context forms the core of the rationale for finding the regulation invalid.

Like the Eighth Circuit, we have no evidentiary basis to reach the conclusion drawn by these other circuits. Neither party has asserted, much less shown, that the class identified in 8 U.S.C. § 1255(a), *i.e.*, admitted aliens and parolees, is coterminous with the class identified in 8 C.F.R. § 245.1(c)(8), *i.e.*, arriving aliens (including parolees) in removal proceedings. Indeed, the limited facts before us do not bear out this relationship.[8] Momin had been in the United States as a parolee for over two years before he was charged as removable. He obtained advance parole and was charged as removable only when his original application for status adjustment was denied. Without data, it is impossible for this court to opine on the likelihood that the vast majority of (or, for that matter, many) arriving aliens are placed immediately into removal proceedings. It would be wholly

---

[8]We note that, in *Mouelle*, the court was provided with statistics indicating that, in 2003, only two to three percent of parolees entering the United States were placed in removal proceedings. 416 F.3d at 930 n.9. Further, we note that the facts of the cases discussed do little to support the understanding that all parolees are subject to removal proceedings: The Mouelles were paroled for ten months before being subject to removal proceedings, *see Mouelle*, 416 F.3d at 925; Zheng was paroled for over six years before he was charged as removable, *see Zheng*, 422 F.3d at 103–04; Bona was paroled for over eight years before being placed in removal proceedings, *see Bona*, 425 F.3d at 664; Geach was on parole for seven years before being placed in exclusion proceedings, *see Geach*, 2006 WL 508101, at *1; and Scheerer was a parolee for eight months before receiving a notice to appear for removal proceedings, *see Scheerer*, 2006 WL 947680, at *1. Only Succar appears to have been paroled and placed in removal proceedings simultaneously. *See Succar*, 394 F.3d at 11.

- 21 -

inappropriate for a reviewing court to hold a regulation invalid on the basis such an assumption.

Nor does our understanding of the statutory structure lead us to believe that the two classes are so similar as to find the regulation to be manifestly contrary to the statute. The INA and its regulations clearly provide that at least *some* parolees will *not* be placed into removal proceedings. And nowhere does the INA mandate that parolees *must* be placed into removal proceedings. Because this court is not satisfied that parolees necessarily are subject to removal proceedings, we cannot conclude that the regulation is manifestly contrary to the statute.[9] Respectfully, we disagree with the reasoning of the *Succar* and *Zheng* lines of cases.

Absent this assumed-but-not-proved conflict, we have been presented with no reason to hold the regulation invalid. In light of the stated reasons for the regulation, *see Mouelle*, 416 F.3d 930 (discussing Proposed Rule, 62 Fed. Reg. at 452, and Interim Rule, 62 Fed. Reg. at 10,326–27), the Attorney General did not act arbitrarily, capriciously, or manifestly contrary to the statute in opting to decline to exercise his discretion favorably for parolees that are subject to removal proceedings. Accordingly, 8 C.F.R. § 245.1(c)(8) is a valid exercise of the Attorney General's discretion under 8 U.S.C. § 1255(a).

IV.     CONCLUSION

The petition for review is DENIED.

---

[9]*Contra Succar*, 394 F.3d at 27 ("Congress purposefully classified paroled individuals as 'inadmissible,' and it also determined that they should generally be placed in removal proceedings."); *Zheng*, 422 F.3d at 117 (stating that "any parolee—that is, any alien who has been inspected but not admitted—will *necessarily* be in removal proceedings"); *Bona*, 425 F.3d at 670 (equating parolees generally with parolees subject to removal proceedings); *Scheerer*, 2006 WL 947680, at *7 ("It is clear from the statutory text, therefore, that Congress intended for virtually all parolees to be in removal proceedings.").