Maximo RICARDEZ–RIVERA,
Petitioner,

v.

Alberto R. GONZALES, Attorney
General, Respondent.

No. 04–71226.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2006.

Filed Oct. 4, 2006.

Jan Joseph Bejar, Esq., San Diego, CA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Carol Federighi, Esq., Michelle G. Latour Fax, DOJ—U.S. Department of Justice

11. *People v. Cunningham,* 25 Cal.4th 926, 108 Cal.Rptr.2d 291, 25 P.3d 519, 568 (2001). 5

**60**

Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, FERGUSON, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

On October 20, 2001, Maximo Ricardez–Rivera ("Ricardez–Rivera") attempted to enter the United States illegally. He was placed in removal proceedings, where he applied for adjustment of status and cancellation of removal. An immigration judge ("IJ") found that Ricardez–Rivera was ineligible for these forms of relief, notwithstanding his claim that immigration officials had previously violated his rights under the Fourth and Fifth Amendments. The Board of Immigration Appeals ("BIA") affirmed, agreeing with the IJ's conclusion that Ricardez–Rivera was ineligible for relief, and further holding that his claim under the Fourth Amendment was without evidentiary support. Ricardez–Rivera timely filed a petition for review.

We have jurisdiction to review the BIA's decision under 28 U.S.C. § 1252(a). We now grant Ricardez–Rivera's petition for review and remand. Because the parties are familiar with the facts, we do not recount them here.

## I.

Ricardez–Rivera contends that the IJ erred when he ruled that the immigration court lacked jurisdiction to consider his application for adjustment of status because Ricardez–Rivera was classified as an "arriving alien." [1] *See* 8 C.F.R. § 245.1(c)(8) (providing that arriving aliens, including aliens paroled into the country, are ineligible to apply for adjustment of status). We agree with Ricardez–Rivera that his mere status as an "arriving alien" does not render him ineligible to apply for adjustment of status. *See Bona*, 425 F.3d at 668 (invalidating 8 C.F.R. § 245.1(c)(8), as contrary to 8 U.S.C. § 1255(a), because it purports to render certain aliens ineligible for adjustment of status when the statute explicitly establishes the eligibility of such aliens). Where, as here, the alien has been paroled into the country for the purpose of immigration proceedings, *Bona* makes clear that his status as an "arriving alien" is insufficient to preclude him from obtaining relief.

## II.

The crux of this case is Ricardez–Rivera's argument that he should be considered eligible for adjustment of status and/or cancellation of removal because of constitutional violations he suffered in 1998, notwithstanding his history of unsuccessful and successful attempts at illegal entry into the United States. He argues that immigration authorities violated his rights under the Fourth Amendment (by questioning and detaining him on the basis

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. Ricardez–Rivera styled this contention as an argument that we should follow the First Circuit's holding in *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir.2005). In *Bona v. Gonzales*, 425 F.3d 663 (9th Cir.2005), we adopted precisely the approach urged by Ricardez–Rivera, following the First Circuit's lead and holding that immigration judges have jurisdiction to consider applications for adjustment of status from aliens who are paroled into the country. *See* 425 F.3d at 664–65.

of his Hispanic race, rather than on the basis of "specific and articulable facts that the [alien] may be illegally in this country," *Nicacio v. INS*, 797 F.2d 700 (9th Cir.1986)), as well as his rights under the Fifth Amendment (by coercing him into signing a request for voluntary departure, in violation of his due process right to a proceeding that "conform[s] to traditional standards of fairness encompassed in due process of law," *Shaughnessy v. United States*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953)).

We address first the question of the proper remedy for Ricardez–Rivera's constitutional claims. The IJ held that Ricardez–Rivera would be ineligible for relief, regardless of "whatever may have transpired prior to June 18, 1998." The IJ held that, on account of Ricardez–Rivera's subsequent attempts at reentry, there was "no doctrine" that would entitle him to relief, "even assuming that his [expulsion to] Mexico on that day [in 1998] was the result of being forced out by a Government Official." The BIA affirmed this conclusion, explicitly stating that it "agree[d] with the Immigration Judge's decision in which he found the respondent ineligible for cancellation of removal and adjustment of status."

These rulings by the IJ and the BIA are contrary to our recent decision in *Salgado–Diaz v. Gonzales*, 395 F.3d 1158 (9th Cir. 2005). In that case, the alien raised identical constitutional claims, arguing that the Border Patrol had violated the Fourth Amendment by stopping him on the basis of his Hispanic appearance, and that he had been involuntarily removed from the country in violation of the Fifth Amendment. As is the case here, the alien had subsequently attempted to reenter using fraudulent documents. We held in *Salgado–Diaz* that, if the alien could prove his allegations of unconstitutional conduct at an evidentiary hearing, the government would be "estopped from relying on his attempted reentry to render him removable." *Id.* at 1168.

■ Ricardez–Rivera is entitled to the same remedy if he can prove at an evidentiary hearing that his constitutional rights have been violated. In this case, as in *Salgado–Diaz*, "[w]e conclude that the doctrine of equitable estoppel precludes the INS from relying on the consequences of its own alleged affirmative misconduct to insulate that misconduct from review." *Id.* at 1165. Accordingly, if Ricardez–Rivera has alleged and can prove a violation of his constitutional rights, the government would be equitably estopped from introducing evidence of his departure in June 1998, his removals in June 1998 and October 2001, and his attempts at reentry in June of 1998 as well as in October 2001, since that most recent attempt at reentry, which resulted from an expedited removal proceeding based on his prior attempts at reentry, was also a direct consequence of the government's allegedly unconstitutional conduct.

The government argues that, regardless of any remedy that may be available to Ricardez–Rivera, remand is unwarranted because Ricardez–Rivera has failed to establish a *prima facie* case in support of the constitutional violations he alleges.

As to his Fourth Amendment claim, Ricardez–Rivera has thus far alleged that Border Patrol officers boarded a half-full public bus traveling within the City of San Diego and, without paying attention to any of the other passengers in the bus (all of whom were white), immediately and without explanation questioned and detained him. The BIA held, and the government now argues, that these allegations are insufficient to establish a *prima facie* case for a Fourth Amendment violation. *See Gonzalez–Rivera v. INS*, 22 F.3d 1441,

1444–45 (9th Cir.1994) (explaining the initial burden of the alien to set forth a *prima facie* case of a constitutional violation); *cf. Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). What the government ignores is that Ricardez–Rivera has never been given the opportunity to present evidence regarding the alleged Fourth Amendment violation. Indeed, the IJ noted that "the Court has no evidence as to what led to the respondent's seeking admission to this country [in June of 1998]." The IJ concluded that it was nonetheless unnecessary to receive evidence or testimony on the matter because "no doctrine" could have made Ricardez–Rivera eligible for relief. Having concluded that the IJ's ruling regarding the unavailability of a remedy is contrary to *Salgado–Diaz,* we thus conclude that Ricardez–Rivera should be permitted to introduce evidence to support his claim. It defies reason to hold, as the BIA did, that there is "insufficient evidence" to support Ricardez–Rivera's Fourth Amendment claim when, due to the perceived lack of an effective remedy, he was never given the opportunity to introduce any. We therefore need not decide whether Ricardez–Rivera's initial affidavit, standing alone, would establish a *prima facie* case for a Fourth Amendment violation. As in *Salgado–Diaz,* we remand for an evidentiary hearing to determine whether Ricardez–Rivera can establish his Fourth Amendment claim.

■ As to his Fifth Amendment claim, Ricardez–Rivera has alleged that he was detained in a holding cell with 15 other men and a putrid toilet, and told that he would remain there indefinitely unless he signed a request for voluntary departure. He further asserts that he was not informed of his right to present his case to an immigration judge, nor instructed about his right to obtain legal counsel. Finally, he alleges that, despite the fact that he expressed his desire to remain in the country, immigration officials misled him and effectively coerced him to agree to voluntary departure by telling him it was the only way he would gain his freedom and, they said, he would probably return to the United States anyway. The government acknowledges that these allegations, if true, would constitute a violation of Ricardez–Rivera's right to due process. Nonetheless, the government argues that Ricardez–Rivera's claim must fail because he cannot show prejudice.

The government's contention is, in essence, an argument about whether Ricardez–Rivera would have been eligible for relief if, rather than agreeing to voluntary departure in June of 1998, he had pursued relief in a hearing before an immigration judge. In other words, the government contends Ricardez–Rivera cannot establish that he was prejudiced by his allegedly involuntary removal because he would not have been eligible for relief at the time his constitutional rights were violated. *That* question, however, was never addressed by the IJ or the BIA. Indeed, the IJ based its ruling entirely on the evidence of Ricardez–Rivera's multiple attempts at reentry. *Salgado–Diaz* makes clear that, assuming the truth of Ricardez–Rivera's allegations, such evidence is not a proper basis for denying him relief. The question of whether Ricardez–Rivera would otherwise be eligible for relief has yet to be answered in these proceedings, and we decline to decide the question for the first time on appeal. *See INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").

On remand, therefore, a determination must first be made as to whether Ricardez–Rivera would be eligible for relief without consideration of his departures, removals, entries, or attempted entries into the country. *Salgado–Diaz*, 395 F.3d at 1166. In the hearing determining Ricardez–Rivera's eligibility for relief, neither the court or the government can rely on the post-expulsion events that its own conduct set in motion. *Id.* If Ricardez–Rivera can establish his eligibility for relief, he then must establish his Fourth or Fifth Amendment claims, either one of which would then entitle him to relief.

### III.

The petition for review is granted and the case is remanded for a determination of Ricardez–Rivera's eligibility for relief, and if necessary, an evidentiary hearing on the merits of his Fourth and Fifth Amendment claims.

**GRANTED** and **REMANDED.**

CALLAHAN, J., concurring in part and dissenting in part:

I agree with the majority that Ricardez–Rivera is entitled to an evidentiary hearing in the Immigration Court on his Fifth Amendment due process claim, and that if he prevails on this claim, under *Salgado–Diaz* he would be returned to his original prearrest status and the government could not rely on his attempted reentries to render him removable. *Salgado–Diaz*, 395 F.3d at 1164, 1168. He is entitled to a hearing because his affidavit filed in the Immigration Court in support of his motion to suppress established a prima facie Fifth Amendment violation. *See Matter of Wong*, 13 I. & N. Dec. 820, 1971 WL 24387 (1971) (holding that a motion for suppression must be specific and detailed, and set forth a prima facie case).

However, Ricardez–Rivera has failed to establish a prima facie Fourth Amendment violation. In his affidavit, he alleged that the Border Patrol officers' approached him on the San Diego county bus based on his Hispanic appearance and questioned him about his nationality.

As a matter of law, these facts do not trigger the Fourth Amendment because the Supreme Court has held that the questioning of a person by law enforcement officials on a public bus is not a seizure of that person. *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). *Bostick* held that even though the bus passenger's movements were confined, this confinement was attributed to the passenger's decision to take the bus, and not to coercive police conduct. *Bostick* relied on the holding in *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), that factory workers were not seized when INS agents entered a factory and questioned its workers about their citizenship. The *Delgado* Court held that the questioning was not a seizure, even with INS agents posted at the factory's exit doors. *Id.* at 218, 104 S.Ct. 1758.

The majority concludes that Ricardez–Rivera should be afforded a hearing to establish a prima facie Fourth Amendment violation. But the BIA requires that the suppression motion itself set forth the prima facie violation. *Matter of Wong*, 13 I. & N. Dec. at 822. "A mere demand for a suppression hearing is not enough to cause one to be held. Statements in a motion for suppression ... must set forth a prima facie case." *Id.* Because *Bostick* held that the questioning of a person on a bus is not a seizure, even assuming that Ricardez–Rivera was approached by Border Patrol agents solely because of his Hispanic appearance as alleged in his motion before the Immigration Court, this encounter did not violate the Fourth Amendment be-

cause it was not a seizure. The encounter led to a seizure and an arrest, but not until probable cause was established. Therefore, I would deny Ricardez–Rivera's petition for review on his Fourth Amendment claim.

Furthermore, if the Immigration Judge somehow found a Fourth Amendment violation based on these facts, suppression of evidence would not be appropriate because suppression is appropriate in immigration cases for Fourth Amendment violations only when the government's conduct is egregious. *Gonzalez–Rivera v. INS,* 22 F.3d 1441, 1448 (9th Cir.1994). This court has held that bad faith violations of an individual's Fourth Amendment rights constitute egregious conduct and that a bad faith violation occurs when an officer engages in conduct that he reasonably should have known is in violation of the Constitution. *Id.* at 1449 (internal citations omitted). Given the well-established holdings of *Bostick* and *Delgado,* Ricardez–Rivera's questioning on the bus by Border Patrol officer was not in bad faith. Therefore, even if an Immigration Court or this court somehow were to conclude that the Border Patrol's conduct violated Ricardez–Rivera's Fourth Amendment rights, the conduct was not egregious and suppression therefore is not an available remedy.

Accordingly, I concur in granting the petition for review and remanding on Ricardez–Rivera's Fifth Amendment claim, but I dissent from the portion of the memorandum disposition granting relief and remanding for a hearing on Ricardez–Rivera's Fourth Amendment claim.